2009 OK CIV APP 84

Rajina HESS and Kelly Parsons, individually and on behalf of persons similarly situated, Plaintiffs/Appellees,

v.

VOLKSWAGEN OF AMERICA, INC., Defendant/Appellant.

No. 106,132.

Court of Civil Appeals of Oklahoma, Division No. 4.

March 31, 2009.

Rehearing Denied May 8, 2009.

Certiorari Dismissed Sept. 21, 2009.

Terry W. West, Bradley C. West, The West Law Firm, Shawnee, OK, T. Christopher Tuck, A. Hoyt Rowell, III, Richardson, Patrick, Westbrook & Brickman, LLC, Mt. Pleasant, SC, for Plaintiffs/Appellees.

John H. Tucker, Kerry R. Lewis, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, OK, Daniel V. Gsovski, Herzfeld & Rubin, PC, New York, NY, for Defendant/Appellant.

DOUG GABBARD II, Presiding Judge.

¶1 Defendant, Volkswagen of America, Inc. (VW), appeals the trial court's certification of a class action. The question to be decided is whether the trial court abused its discretion in granting class action status. We hold that it did not and affirm.

### FACTS

¶2 Plaintiffs, Rajina Hess and Kelly Parsons, each own a Jetta automobile manufactured and/or sold by VW. Each vehicle was purchased used.

¶3 In 2005, Plaintiffs sued VW for breach of express and implied warranties relating to an alleged improperly designed front bumper. Plaintiffs asserted that, in backing out of a parking space, the bottom of the Jetta's front bumper cover would "catch" on the curb or wheel-stop, causing the bumper to be damaged or pulled off the car. They asserted that this occurred because the bumper and spoiler "were lower to the ground" than the height of a standard curb or wheel-stop. By the time of the class certification hearing, Plaintiffs had modified this allegation to assert that VW was liable for "failure to design a front bumper assembly that should mitigate the adverse consequences of impact between a front bumper and curbs or park stops." According to Plaintiffs' expert, an automotive engineering consultant:

> Contact between the lower portion of the front bumper cover and a parking lot wheel stop was, or should have been, a foreseeable and expected event in vehicle design, manufacture, and sale of the 1999 through 2003 Volkswagen Jetta. Thus, by failing to recognize this and to take adequate steps to mitigate the anticipated adverse consequences, the process of designing the front bumper assembly on the 1999 through 2003 Jetta was defective and resulted in a defective product.

¶4 Plaintiffs sought to certify their lawsuit as a class action, composed of a nationwide class of owners of 1999–2003 Volkswagen Jettas. According to the trial court's order, there were about 650,000 such vehicles in this country. However, the testimony of a VW executive indicated the company had only

received about 1,500 complaints of bumper damage.[1]

¶ 5 Following extensive briefing and a hearing, the trial court granted Plaintiffs' motion for class certification, with the class to be composed of "[a]ll entities and adult persons domiciled or residing in the fifty (50) States of the United States of America and the District of Columbia who are current owners or lessees of at least one model year 1999–2003 Jetta automobile sold by Volkswagen of America Inc." Certain persons were expressly excluded, including participants in other similar class actions.

¶ 6 In its order granting certification, the court analyzed the case pursuant to the statutory prerequisites of 12 O.S.2001 § 2023,[2] finding:

(1) Numerosity—the class would be composed of up to 650,000 persons.

(2) Commonality—the common issue was whether VW's alleged failure to account for a reasonably anticipated use was a design defect. The order states:

> Whether or not the design defect exists would be a common question regardless of the individual issues of use or misuse. Therefore a merits determination on the issue of the potential design defect would be common to the members of the class. The Court does not believe that the common issue of vehicle design is outweighed by the actual physical condition of each vehicle in the putative class.

(3) Typicality—the court noted that all Plaintiffs alleged the same type of treatment and harm suffered as other class members, namely that the car's "design . . . fails to reasonably anticipate the contact with the undercarriage leading to damage."

(4) Adequacy of representation—the trial court found Plaintiffs' attorneys to be experienced and well-qualified to represent the class.

(5) Predominance—the court found the proof necessary to establish the defective design claim to be the same for every member of the class.

(6) Superiority—the court concluded the costs of pursuing individual claims would be prohibitive.

¶ 7 The court found that the overriding factual issues were "whether class members should have the benefit of a uniform determination of the alleged nature of the design of the Jetta and the reasonably foreseeable effects of any type or height of parking barrier or obstruction would have to the front bump-

---

1. VW's expert asserted that only 663 of these complaints reflected allegations of bumper damage resulting from contact with a parking block or wheel stop. This expert also estimated that such damage occurred "only once for every 7 million times the vehicles in the putative class 'fleet' have been parked."

2. Title 12 O.S.2001 § 2023 provides in pertinent part:
   A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
   1. The class is so numerous that joinder of all members is impracticable;
   2. There are questions of law or fact common to that class;
   3. The claims or defenses of the representative parties are typical of the claims or defenses of the class;
   4. The representative parties will fairly and adequately protect the interests of the class.
   B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:
   . . .

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
   a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,
   b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class.
   c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and
   d. the difficulties likely to be encountered in the management of a class action.

er assembly." The trial court also found that the laws of Michigan, the location of VW's corporate headquarters, should apply.

¶ 8 VW appeals. It does not dispute the trial court's findings regarding the requirements of superiority or adequacy of representation,[3] but asserts that it erred as to numerosity, typicality, commonality, and predominance.[4]

## STANDARD OF REVIEW

■ ¶ 9 The standard of review in an appeal of an order certifying a class action is whether the trial court abused its discretion. *Shores v. First City Bank Corp.*, 1984 OK 67, ¶ 4, 689 P.2d 299, 301. An abuse of discretion occurs if the record fails to support the conclusion that each of § 2023's prerequisites is fulfilled. *Id.*

## ANALYSIS

### I. Numerosity

■ ¶ 10 Numerosity occurs when "the class is so numerous that joinder of all members is impracticable." 12 O.S.2001 § 2023 (A)(1). This requirement is satisfied by numbers alone where the size of the class is in the hundreds. *Black Hawk Oil Co. v. Exxon Corp.*, 1998 OK 70, ¶ 17, 969 P.2d 337, 343. However, the Oklahoma Supreme Court has approved a class of as few as 11 persons. *See Hall Jones Oil Corp. v. Claro*, 1969 OK 113, 459 P.2d 858.

■ ¶ 11 Here, Jetta owners number in the hundreds of thousands. VW acknowledges this fact, but argues that the class should not include persons who have never suffered damage or those with no warranty remaining on their vehicles. These matters are discussed below. However, even if we agreed with VW that there are only 663 persons who have suffered actual bumper damage from wheel stops or curbs, this number would satisfy the numerosity requirement.

### II. Typicality

■ ¶ 12 A plaintiff's claims or defenses must be typical of those of the class. Typicality exists " '[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented ... irrespective of varying fact patterns which underlie individual claims.' " *Ammons v. Am. Family Mut. Ins. Co.*, 897 P.2d 860, 863 (Colo.Ct. App.1995) (quoting 1 H. Newberg, *Newberg on Class Actions* § 3–13 at 3–77 (3d ed.1992)). Factual variations that affect the amount of damages do not negate the typicality requirement, as long as the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal theory. *Lobo Exploration Co. v. Amoco Prod. Co.*, 1999 OK CIV APP 112, ¶ 17, 991 P.2d 1048, 1055.

■ ¶ 13 Here, Plaintiffs have alleged the same type of treatment and harm as the class—*i.e.*, that the car's design failed to reasonably anticipate contact with the undercarriage, leading to damage. Plaintiffs and each putative class member are all affected by the same alleged conduct by VW, because all own the same model of automobile with the same alleged design defect. Clearly, this element has been met.

### III. Commonality

■ ¶ 14 Commonality requires the existence of questions of law or fact common to the class members. As a general rule, where a lawsuit challenges a practice or policy affecting all putative class members, individual factual differences among the individual litigants will not preclude a finding of commonality. *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, ¶ 21, 81 P.3d 618, 627.

■ ¶ 15 Here, Plaintiffs present a classic factual pattern for a class action lawsuit: They are a group of consumers asserting a

---

3. VW does assert adequacy of representation is "in question" because of variations in claims or defenses, but this is more appropriately addressed as a predominance issue. VW admits Plaintiffs' counsel are competent and qualified to represent the class.

4. Because we find the issues adequately addressed in the parties' briefs, we deny VW's motion for oral argument.

single company (VW) produced copies of a product (Jetta) that all shared a common defect (defective bumpers and covers). All Jettas share the same affected parts, those parts are all mass-produced using the same design and materials, those parts are all installed in the same manner, and the alleged defect is a common one potentially affecting every member of the putative class.

## IV. Predominance

■ ¶ 16 A class should not be certified unless common questions of law or fact predominate individual questions. The determination of predominance is a "qualitative rather than quantitative" matter because the weight of resolving certain issues may outweigh their number. *Mattoon v. City of Norman*, 1981 OK 92, ¶ 18, 633 P.2d 735, 739. The trial court found that this requirement had been met because "the proof necessary to establish the class claims for breach of implied warranties and defective product design is the same for each and every class member when viewed under Michigan law." VW disagrees, asserting that individual laws and facts predominate.

### a) Individual laws do not predominate

■ ¶ 17 Although VW does not design, manufacture, or assemble Jetta vehicles anywhere in the United States, the trial court concluded that Michigan law should apply because that is the jurisdiction where VW maintains its corporate headquarters, and because VW's corporate leadership made sales distribution and warranty decisions which impacted class members across the U.S. VW disagrees, asserting the general rule that the law of the place of delivery governs, and arguing that since the Jetta was delivered and sold in 51 U.S. jurisdictions, individual issues of law predominate. It also asserts that application of Michigan law would violate the U.S. Constitution. We disagree.

¶ 18 Oklahoma follows the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws (1971). *Brickner v. Gooden*, 1974 OK 91,

¶ 23, 525 P.2d 632, 637. In *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, 81 P.3d 618, the Oklahoma Supreme Court used this test and affirmed a class certification in a breach of warranty lawsuit filed by minivan owners who asserted their vehicles had defective air bags. Finding that Michigan law applied because that was where the company had its principal place of business and made its business decisions about the design, manufacture, and distribution of the minivans, the Court stated:

> The needs of the interstate system and the basic policies of predictability and uniformity of result require that the issue of product defect be determined in one forum with one result rather than in 51 jurisdictions with the very real possibility of conflicting decisions. While the interest of each home state in applying its local law is significant, Michigan's interest in the conduct of its manufacturer, and thus its connection to the warranty issues, is greater. Michigan law applies. It should be noted that this conclusion is consistent with the constitutional imperative that "for a state's substantive law to be selected in a constitutionally permissible manner, that state must have a significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–313, 101 S.Ct. 633, 66 L.Ed.2d 521(1981)).

*Id.* at ¶ 16, 81 P.3d at 626; *see also Masquat v. DaimlerChrysler Corp.*, 2008 OK 67, 195 P.3d 48. Although the Jetta is designed and manufactured by third parties in other countries, its features, sales, availability, and warranties are the result of decisions made at VW's corporate headquarters in Michigan. Michigan is the state with the most significant relationship to the parties and the litigation, and is the *only* state where conduct relevant to all class members occurred. *Ysbrand's* logic applies.[5]

---

5. We find VW's reliance on *Cuesta v. Ford Motor Co.*, 2009 OK 24, 209 P.3d 278, decided by another division of this Court, is misplaced. First, the Supreme Court granted certiorari in *Cuesta* on October 6, 2008, and, therefore, we may accord it no precedential or persuasive authority.

### b) Individual facts do not predominate

#### 1) Facts related to causation

¶ 19 VW asserts that individual issues of fact predominate because causation will have to be determined on a case-by-case basis. It asserts that each bumper damage incident will involve unique facts, different drivers and methods of parking, different curbs and wheel-stops (since there is no "standard" size, according to VW), vehicles with different maintenance histories, and different witnesses.

¶ 20 VW relies on a Florida case, *Volkswagen of America, Inc. v. Sugarman*, 909 So.2d 923 (Fla.Ct.App.2005), which, like the instant case, concerns a class composed of Jetta owners whose front bumper assemblies had been damaged as a result of contact with a wheel stop or curb.[6] The Florida appellate court noted that, under Florida law, the "predominance requirement is not satisfied when the claims involve factual determinations which are unique to each plaintiff." *Id.* at 924. It reversed class certification because "the key element of causation mandates individual inquiry into each plaintiff's claim," including such factors as vehicle condition, type of damage, and actions of the driver. *Id.*

¶ 21 The *Sugarman* holding is clearly inconsistent with Oklahoma law. In *Ysbrand*, DaimlerChrysler argued that there was no predominance because of the need for individual proof of each class member's reliance on the express warranty. The Oklahoma Supreme Court disagreed, stating:

> More importantly, the facts in *Cuesta* are clearly distinguishable. There, COCA rejected application of Michigan law in a class action case where the plaintiff alleged that his Ford pickup contained a defective electronic throttle control accelerator pedal. The pedal was designed and manufactured by Williams Controls, Inc., another defendant, and installed by Ford in its pickups and trucks. Unlike the present case, the defendants' relevant conduct occurred in several jurisdictions: Ford's principal place of business was in Michigan, and Williams' was in Oregon; Williams' subsidiary design group was in Florida; the pedals were tested in Arizona; and Ford installed the pedals in Kentucky and Mexico. We also note that another division of this Court recently applied *Ysbrand* to affirm certification of a class of Jeep and Jeep Cherokee owners, and application of Michigan law in a case involving

Whether individual findings of reliance are required goes to the merits of the claims. It is a question of Michigan law. A need for individual findings would not, however, defeat class certification. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Lobo Exploration Co. v. Amoco Production*, 1999 OK CIV APP 112, 991 P.2d 1048, 1055 (quoting *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996)). . . . The trial court remains free to maintain the class with respect to particular issues or create subclasses should the need arise. *See* Okla. Stat. tit. 12, § 2023(C)(4)(2001).

2003 OK 17 at ¶ 21, 81 P.3d at 627. Similarly, in *Masquat v. DaimlerChrysler Corp.*, 2008 OK 67, ¶ 26, 195 P.3d 48, 57, the Supreme Court stated:

> Predominance does not require that there be no individual issues. It requires that the issues which can be answered as to all class members have more significance and weight than individual issues.

¶ 22 Here, the "core liability issue asserted by the class"[7] is that the Jetta has a defectively designed bumper assembly which can lead to damage during the everyday, routine act of parking. Plaintiffs' expert's affidavit states there were only minor variations in the height of the Jettas, and these variations did not affect his conclusion that the bumper design was defective and was common to *all*

the alleged defective design of a throttle mechanism. *Montgomery v. Chrysler Corp.*, Appeal No. 104,098 (issued April 14, 2008). The Supreme Court denied Chrysler's petition for certiorari in that case, and mandate issued in October 2008.

6. VW notes that *Miller v. Volkswagen of America, Inc.*, 2008 WL 4278178 (Ohio Ct.App.2008)(appeal not accepted for review by Ohio Supreme Court, 120 Ohio St.3d 1525, 901 N.E.2d 245 (Feb. 18, 2009)) reached a different conclusion. There, the Ohio Court of Appeals affirmed the trial court and held class certification was proper in a case involving allegations similar to those here.

7. *See Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶ 11, 164 P.3d 1028, 1032–33.

1999–2003 Jettas. Because Plaintiffs assert that a common design caused the problem, each bumper does not have to be examined individually. Clearly, all potential class members will prove their core liability claims using the same legal theory and evidence. We reject VW's argument.[8]

#### 2) Facts related to damages

■ ¶ 23 As noted in the previous section, the proposed class is not limited to owners whose 1999–2003 Jettas have been damaged in parking incidents, but includes all 1999–2003 Jetta owners. VW asserts that common issues cannot predominate since most class members have never experienced bumper damage and have no basis for a claim. This raises the question of whether a breach of warranty action can be brought by a plaintiff for an allegedly defective product that has a "potential" for damage, but which has not yet "manifested" damage. Oklahoma and Michigan have not yet answered this question.[9]

¶ 24 In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the U.S. Supreme Court held that it is inappropriate to inquire into the merits of a class action dispute in deciding whether a class should be certified.[10] The *Eisen* rule was adopted by the Oklahoma Supreme Court in *Black Hawk v. Exxon*, 1998 OK 70, ¶¶ 18 and 29, 969 P.2d 337, 343 and 345. In *Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, 164 P.3d 1028, the Supreme Court

examined the "merits" of the case to determine whether individual issues of fact would have to be proved by each member of the putative class, not to determine whether plaintiffs could provide that proof. More recently, in *Masquat*, the Oklahoma Supreme Court repeated that "a court may consider the merits [but only] insofar as they inform what individual issues might be a part of the adjudicatory process." 2008 OK 67 at ¶ 10, 195 P.3d at 52–53 (internal quotation marks omitted).

■ ¶ 25 Nevertheless, Oklahoma also subscribes to the rule that its courts "do not sit to decide hypothetical issues or to give advisory opinions about issues not yet in controversy." *In re Adoption of Baby G.*, 2008 OK 92, ¶ 7, 195 P.3d 377, 379. In Oklahoma, as in most states, actions for breach of an express or implied warranty require proof of damages as an element. *See Collins Radio Co. of Dallas, Tex. v. Bell*, 1980 OK CIV APP 57, ¶¶ 42–45, 623 P.2d 1039, 1052–53; *Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir.1999). Where a breach of warranty has not resulted in damage, or where damages are remote and unlikely to occur, there is no justiciable controversy, and any suit thereon should be dismissed for want of jurisdiction.

¶ 26 Two cases illustrate the parameters of this rule: In *DaimlerChrysler v. Inman*, 252 S.W.3d 299 (Tex.2008), the Texas Supreme Court reviewed a certification order in a class action lawsuit alleging that certain Da-

---

**8.** VW also relies on two unreported cases from this state, a federal court decision, *In re: General Motors Corporation, "Piston Slap" Products Liability Litigation*, 2006 WL 1049259 (W.D.Okla. 2006), and an unpublished decision by this Court, *Caraway v. General Motors Corporation*, # 102,223 (2006). Each case involved proposed class actions alleging certain Chevrolet vehicles had a design defect which caused the engine to make a "piston slap" noise. *Caraway* held that the predominance requirement was not satisfied because the evidence indicated that the alleged defect (due to excessive clearance between the piston and cylinder wall) occurred in only a small percentage of 4,000,000 potentially affected vehicles, and the only way to determine whether a vehicle had the defect was by examining each engine individually. We find *Caraway* distinguishable on its facts.

**9.** On this issue, the Texas Supreme Court recently stated, " 'the law in most states (including

Texas) is unclear' on 'whether to permit express warranty claims for unmanifested defects.' " *DaimlerChrysler v. Inman*, 252 S.W.3d 299, 304 (Tex.2008) (footnote omitted).

**10.** Admittedly, this rule is subject to the principle that courts are required to identify and review the "core liability issues" asserted by the class. *See Scoufos v. State Farm Fire and Cas. Co.*, 2001 OK 113, ¶ 1, 41 P.3d 366, 367. Ultimately, the tension between the two rules has produced what some commentators called a "muddled body of case law." Robert G. Bone & David S. Evans, *"Class Certification and the Substantive Merits,"* 51 Duke L.J. 1251, 1270 (2002), quoted in Steven S. Gensler, *"Civil Procedure: Class Certification and the Predominance Requirement Under Oklahoma Section 2023(B)(3),"* 56 Okla. Law. Rev. 289, 313–14 (2003).

imlerChrysler cars had seat belts that were "too easy" to unlatch. None of the plaintiffs had been injured and only one plaintiff was sure that a problem with his seatbelt had occurred. The Texas Court dismissed the lawsuit, holding that the plaintiffs lacked standing because the possibility of injury was extremely remote: "if injury is only hypothetical, there is no real controversy." *Id.* at 307. In contrast, in *Hicks v. Kaufman and Broad Home Corp.*, 89 Cal.App.4th 908, 107 Cal.Rptr.2d 761 (2001), the California Court of Appeal held that a warranty action may be maintained for an "inherent defect" which is "substantially certain" to result in malfunction during the inherent life of the product. *Id.* at 768. *Hicks* involved a class action suit for breach of warranty due to defective home foundations, and the Court stated: "We see no reason why a homeowner should have to wait for the inevitable injuries to occur before recovering damages to repair the defect and prevent the injuries from occurring." *Id.* at 773.

¶ 27 At the certification stage of a class action suit, the issue is not whether each class member has sustained damage, but whether the defective product has *manifested* injury, and, if not, whether the possibility of injury is *likely* or *extremely remote*. This principle is illustrated by the Supreme Court's approval of class certification in both the *Ysbrand* and *Masquat* cases, where most class members had not yet sustained actual injury. Certification was proper because the defective vehicle had either manifested injury or injury was not so remote as to be unlikely to occur.

¶ 28 Similarly, Plaintiffs allege that the bumper design has already manifested injury, and VW concedes that 663 persons have complained that their Jetta bumpers were damaged after parking near a curb or wheel-stop. The fact that many members of the class have not yet sustained damage does not prevent class certification.

¶ 29 In fact, we agree that certification as to "all owners" is proper, notwithstanding VW's protestation that many class members are unlikely to ever sustain injury. We do so on the basis of the "commonality" of the prospective member's interest.

Whether individual class members are able to prove damages is a factual determination more properly addressed during the "merits" phase of the case. We remind the parties that a certification order is "conditional and may be altered or amended before the decision on the merits." 12 O.S.2001 § 2023 (C)(1). A suit may meet certification requirements and later be dismissed. *See Miller v. Mackey International, Inc.*, 452 F.2d 424 (5th Cir.1971).

### 3) Facts related to limitations/warranty

¶ 30 VW also asserts that individual issues predominate because some plaintiffs own cars for which the express warranties have expired, or because some plaintiffs may not have properly notified VW of the defect, as required by Michigan law. Similar arguments were raised in *Ysbrand*, where DaimlerChrysler claimed that there must be individual proof of each class member's reliance on the express warranty, and *Masquat*, where the company claimed that there must be individual proof of each class member's failure to use reasonable diligence in learning of the alleged defect sufficient to defeat the statute of limitations. As noted above, the Supreme Court held that such individual findings go to the merits of the claims and the necessity for such findings does not defeat class certification.

### CONCLUSION

¶ 31 Accordingly, the order certifying this case as a class action is affirmed.

¶ 32 AFFIRMED.

RAPP, J., and FISCHER, J., concur.