2014 OK 111

**Rajina Hess & Kelly PARSONS, Individually and on behalf of persons similarly situated, Plaintiffs/Appellees,**

v.

**VOLKSWAGEN OF AMERICA, INC., Defendant/Appellant.**

**No. 111978.**

Supreme Court of Oklahoma.

Dec. 16, 2014.

See also 221 P.3d 132.

John H. Tucker, Colin H. Tucker, Kerry R. Lewis, Rhodes Hieronymus Jones Tucker & Gable, Tulsa, Oklahoma, for Defendant/Appellant,

Daniel V. Gsovski, Herzfeld & Rubin, PC, New York, New York,

Terry W. West, Bradley C. West, The West Law Firm, Shawnee, Oklahoma, for Plaintiffs/Appellees,

T. Christopher Tuck (pro hac vice), A Hoyt Rowell, III (pro hac vice), Richardson, Patrick, Westbrook & Brickman, LLC, Mt. Pleasant, South Carolina

Dennis E. Murray Sr. (pro hac vice), Donna Evans (pro hac vice), Murray & Murray, Sandusky, Ohio,

Juan Bauta (pro hac vice), The Ferraro Law Firm, Miami, Florida

Clyde A. Muchmore, Melanie Wilson Rughani, Crowe & Dunlevy, Oklahoma City, Oklahoma, for amicus curiae, State Chamber of Oklahoma.

WATT, J.

¶ 1 To dispose of the appeal, we must determine a single issue:[1] whether granting attorney fees exceeding $7 million in a multi-jurisdictional, class action law suit constitutes an abuse of discretion where $45,780 was awarded to the class as a whole. Here, the trial court originally determined the appropriate attorney fees to be $3,610,719.15 based on *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659 and the directives of 12 O.S. Supp.2009 § 2023.[2] Hess filed a motion to reconsider based on the fees awarded in *Berry v. Volkswagen Group of America*, 397 S.W.3d 425 (Mo.

---

**1.** Volkswagen argues that both the initial and the enhanced fee awards violate due process. Our determination that the trial court abused its discretion both in including attorney fees in the failed Florida litigation in calculating the lodestar and in enhancing its award on reconsideration by a factor of 1.9 negate the need to address the due process challenge, as attorney fees must be recalculated on remand. For the same reason, it is premature to consider issues raised concerning the amount of the fee to be awarded and the manner in which it should be calculated as articulated in the Brief of *Amicus Curiae*, The State Chamber of Oklahoma, filed on April 1, 2014. Arguments that Professor Charles Silver's testimony should have been excluded because of admissions that he was unaware of Oklahoma law as it related to the award of attorney fees appears unwarranted. Although Volkswagen argues that Silver's testimony was key in the trial court's determination of the hourly rates to approve and for approval of the lodestar, it appears that assertions that fees as high as $800 per hour were included in calculation of the lodestar are unfounded. Volkswagen's own witness testified that rates of $650 per hour were reasonable. [Where testimony is cumulative to other admissible evidence admission is harmless error. See, *Cuesta–Rodriguez v. State of Oklahoma*, 2010 OK

CR 23, ¶ 40, 241 P.3d 214, *reh'g denied*, 247 P.3d 1192 (2011), *cert. denied*, — U.S. ——, 132 S.Ct. 259, 181 L.Ed.2d 151 (2011); *Simpson v. State of Oklahoma*, 2010 OK CR 6, ¶ 23, 230 P.3d 888, *cert. denied*, — U.S. ——, 131 S.Ct. 1009, 178 L.Ed.2d 838 (2011).] When the original lodestar figure of $3.8 million is divided by the number of hours billed, approximately 7,600, the average rate per hour billed equals $500 per hour. In addition, ¶¶ 31 through 35 of the trial court's Order, filed on April 10, 2013, make it clear that rates of $650 to $700 were utilized in calculation of the lodestar.

**2.** Title 12 O.S. Supp.2013 § 2023 providing in pertinent part:
"... G. ATTORNEY FEES AND NONTAXABLE COSTS. 1. In a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by law or by the parties agreement....
4. In considering a motion for attorney fees filed after the effective date of this act:
a. the court shall conduct an evidentiary hearing to determine a fair and reasonable fee for class counsel ...
e. in arriving at a fair and reasonable fee for class counsel, the court shall consider the following factors:

2013), a Missouri Supreme Court case involving a class action against Volkswagen related to defective window regulator claims. The trial court considered the Missouri case; and, **adopting the identical analysis utilized in reaching a determination that the appropriate fee award was approximately $3.6 million, the trial court amended its order to reflect a multiplier of 1.9 for an adjusted award of $7,221.438.30.[3]**

¶ 2 In calculating the lodestar, the trial court included hours in failed, out-of-state litigation concerning similar issues to those presented here. Based on these facts, we hold that the $7 million attorneys' fee award constituted an abuse of discretion.

### RELEVANT FACTS AND PROCEDURAL HISTORY

¶ 3 In 2005, Hess filed a class action suit against Volkswagen for breach of express

(1) time and labor required,
(2) the novelty and difficulty of the questions presented by the litigation,
(3) the skill required to perform the legal service properly,
(4) the preclusion of other employment by the attorney due to acceptance of the case,
(5) the customary fee,
(6) whether the fee is fixed or contingent,
(7) time limitations imposed by the client or the circumstances,
(8) the amount in controversy and the results obtained,
(9) the experience, reputation and ability of the attorney,
(10) whether or not the case is an undesirable case,
(11) the nature and length of the professional relationship with the client,
(12) awards in similar cases,
(13) the risk of recovery in the litigation, and
f. if any portion of the benefits recovered for the class in an action maintained pursuant to paragraph 3 of subsection B of this section are in the form of coupons, discounts on future goods or services or other similar types of noncash common benefits, the attorney fees awarded in the class action shall be in cash and noncash amounts in the same proportion as the recovery for the class."
A prior version of the statute was in effect when the settlement agreement was signed. Nevertheless, the quoted portion of § 2023 remains virtually the same in the revised version which became effective on September 1, 2013.

3. Trial court's order, filed June 14, 2013, providing in pertinent part:

and implied warranties relating to an improperly designed front spoiler. The claimants argued that there were design defects which caused the Jetta's [4] front spoiler cover to catch on curbs or wheel-stops resulting in damage to the front spoiler. Certification of the class was upheld by the Court of Civil Appeals in 2009.[5] Plaintiffs in Ohio filed a similar action in 2004. Volkswagen successfully decertified a Florida cause in July of 2005.[6]

¶ 4 The parties entered a settlement agreement in December of 2011. Ohio residents filed an application to intervene on July 31, 2012. The Amended Order of Final Judgment Granting Final Approval of Settlement and Certification of Class was entered in November of the same year.

¶ 5 In conformance with the settlement, Volkswagen notified in excess of two million owners and lessees of class vehicles nation-

"... 1. In determining whether to reconsider and amend the Court's previous ruling regarding the award of fees and costs to the Plaintiff, the Court must first conduct an analysis of whether or not the 13 factors contained in the Oklahoma statutory scheme (12 O.S. § 2023(G)(4)(e)) for determining the amount to award in a particular class action case are consistent with due process. **The Court adopts its previous findings in paragraphs 24–51 of its Order of April 10, 2013 as to the litigation process and the application of the 13 statutory factors to that effort....** [Emphasis supplied.]

4. Originally, the class was intended to include model years 1994–2003. However, the certified class included "owners in the United States who purchased or leased a 1999–2003 Jetta." *Miller v. Volkswagen of America*, 889 F.Supp.2d 980 (N.D.Ohio 2012).

5. A more detailed account of the underlying certification process can be found in *Hess v. Volkswagen of America, Inc.*, 2009 OK CIV APP 84, 221 P.3d 132. Although Volkswagen sought certiorari of the certification decision, it was dismissed as untimely on September 21, 2009.

6. This is the failed *Sugarman* litigation for which Mr. Bauta seeks reimbursement for attorney fees and costs in the instant cause. See, *Volkswagen of America, Inc. v. Sugarman*, 909 So.2d 923 (Fla. App.2005). Nevertheless, the Florida claimants are a part of the negotiated nationwide settlement here.

wide. The parties agree that the average pay-out to each successful applicant for repair costs constituted a full recovery. No Oklahoma citizens received any settlement pay-out. Claims from other states totaled 310 for a distribution by Volkswagen of $45,780 or approximately $140.00 per claimant.[7]

¶ 6 As a part of the settlement, Volkswagen agreed to pay the claimants' reasonable attorney fees and costs.[8] Hess filed its Brief in Support of an Award of Attorneys' Fees, Expenses and Class Representative Incentive Awards on October 2, 2012 seeking a combined fee and expense request of $15,000,000.00.[9] On April 10, 2013, the trial court entered an order granting Hess attorney fees of $3,610,719.15 and expenses of $146,133.06. The attorney fee award included a downward adjustment[10] of 5% to accommodate for fees incurred in the failed Florida litigation. In support of the award, the trial court provided detailed analysis of the legislatively enacted factors found in 12 O.S. Supp.2013 § 2023.

¶ 7 The day before the order awarding attorney fees issued, the Missouri Supreme Court decided *Berry v. Volkswagen Group of America*, 397 S.W.3d 425 (Mo.2013). In *Berry*, the Missouri court determined that no abuse of discretion occurred by the trial court's application of a 2.0 multiplier to the lodestar. Relying on the Missouri case, Hess filed a Motion for Reconsideration of the Order Granting an Award of Fees and Expenses on April 19, 2013.

¶ 8 The trial court considered *Berry* and, ultimately, applied a multiplier of 1.9 to its earlier determined lodestar of $3,800,757.00 resulting in an adjusted fee award of $7,367,571.36. Volkswagen appealed, filing a timely Petition In Error on July 12, 2013. On February 25, 2014, the claimants' motion to retain was granted. The State Chamber filed an *amicus brief* April 1st. After defects in the record were corrected, we received the same from the trial court on June 20, 2014.

## STANDARD OF REVIEW

¶ 9 The reasonableness of attorney fees depends on the facts and circumstances of each individual case and is a question for the trier of fact.[11] The standard of review for considering the trial court's award of an attorney fee is abuse of discretion.[12] Rever-

---

7. The settlement also extended the warranty period for repairs for an additional year.

8. The Settlement Agreement (Amended), filed on June 29, 2012 providing in pertinent part at 17 and 21:

"COSTS AND ATTORNEY FEES
17. Plaintiff's Counsel and VWGoA shall confer on a reasonable attorneys' fee and expense reimbursement to determine if the parties can reach agreement. Plaintiff's Counsel shall then apply to the Court, on or before forty-five days prior to the final fairness hearing, for an award of reasonable attorneys' fees and expenses for all professional services rendered and to be rendered in connection with the prosecution of this action and the consummation of this Settlement in an amount which shall be determined by the Court under applicable law, separate and apart from any payments or benefits provided to any member of the Settlement Class or the Settlement Class as a whole pursuant to the terms of this Settlement Agreement. The district court shall set the award of attorneys' fee and expenses in the absence of any agreement by the parties, subject to any and all rights of appeal by an aggrieved party or objecting class member, which are expressly reserved. The amount of Plaintiffs' application, and the material terms of any agreement by the defense not to oppose such

application, if applicable, shall be disclosed in the Summary and Full Notices of Settlement ... 21. This Settlement Agreement, and all terms and provisions thereof, shall be construed under and governed exclusively by the laws of the State of Oklahoma, including but not limited to 12 Okla. Stat. § 2023, without application of any choice of law principles...."

9. Mr. Juan Bauta sought lodestar fees of 1,361.18 hours at a rate of $650.00 per hour for a total of $884,767.00. Declaration of Juan Bauta in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses and Class Representative Incentive Awards, p. 2. Volkswagen alleges that some 784.75 hours were billed to the class action attributable to the failed *Sugarman* litigation in Florida for a total lodestar amount of $510,087.50.

10. *Arkoma Gas Co. v. Otis Engineering Corp.*, 1993 OK 27, ¶ 6, 849 P.2d 392.

11. *Id.* at ¶ 8.

12. *Matter of Adoption of Baby Boy A*, 2010 OK 39, ¶ 19, 236 P.3d 116; *Tibbetts v. Sight 'n Sound Appliance Ctrs.*, 2003 OK 72, ¶ 3, 77 P.3d 1042; *Burk v. Oklahoma City*, 1979 OK 115, ¶ 19, 598 P.2d 659.

sal for an abuse of discretion occurs where the lower court ruling is without rational basis in the evidence or where it is based upon erroneous legal conclusions.[13]

¶ 10 Appropriate steps to determine attorney fees begin with perusal of detailed time records to determine a lodestar fee arrived at by multiplying the attorney's hourly rate by the time expended. Next, in class action suits, the fee may be enhanced by application of certain factors to be considered in arriving at a fair and reasonable fee for class counsel. The considerations are delineated by the Legislature in 12 O.S. Supp.2013 § 2023 and include: time and labor required; novelty and difficulty of the questions; skill required to perform the legal services; preclusion of other employment; customary fee; whether the fee is fixed or contingent; time limitations; amount involved and results obtained; experience, reputation, and abilities of attorneys involved; undesirability of the case; nature and length of the professional relationship with the client; awards in similar causes; risk of recovery; and whether any benefits of the recovery take a non-cash form.[14] **In all cases, the attorney fees must bear some reasonable relationship to the amount in controversy.[15]**

## ¶ 11 UNDER THE FACTS PRESENTED, THE TRIAL COURT ABUSED ITS DISCRETION IN COMPUTING THE LODESTAR AND IN APPLYING A MULTIPLIER OF 1.9 TO THE SAME.

¶ 12 Hess originally sought $15 million in attorney fees. Here, the claimants assert that the trial court did not abuse its discretion in granting the motion for reconsideration and applying an incentive fee of 1.9 to its originally calculated lodestar, which included fees from the Florida failed certification proceeding. It argues no error resulted from the trial court's reliance on a single out-of-state opinion in making its incentive decision, noting that Oklahoma law compels consideration of awards in similar causes.

¶ 13 Volkswagen argues that including the hours attributable to the failed Florida litigation in determining the lodestar was inappropriate and that application of an incentive fee of 1.9 to the calculated fee was unwarranted. The claimants contend that the Missouri case upon which the court relied is contrary to Oklahoma law and distinguishable. We agree with Volkswagen's assertions.

¶ 14 **a. Including attorney fees incurred in the failed Florida litigation in computing the fee award was a clear abuse of discretion.**

¶ 15 Juan B. Bauta represented Florida class members in *Volkswagen of America, Inc. v. Sugarman,* 909 So.2d 923 (Fla.App. 2005) for relief identical to that sought in the instant cause. The Florida claimants alleged that, as a result of a design defect, the class suffered repeated damage to the front spoiler assembly of their Volkswagen Jettas.

¶ 16 The trial court certified the class. The Florida Appellate Court determined that the trial court abused its discretion in reaching the certification ruling. It reasoned that the element of causation would require an individual inquiry into each plaintiff's claim. Therefore, the cause was reversed and remanded for decertification. Rehearing was denied.

¶ 17 Volkswagon asserts that Juan B. Bauta (Bauta) billed some 803.13 hours in the failed Florida litigation. It asserts that including these hours in the raw lodestar total in the instant cause constituted an abuse of discretion. Hess argues that inclusion of the hours was appropriate as Bauta's experience in Florida contributed to the successful settlement of the instant cause and allowed Florida residents to be included within the

**13.** *Thomas v. E–Z Mart Stores, Inc.,* 2004 OK 82, ¶ 7, 102 P.3d 133.

**14.** Title 12 O.S. Supp.2013 § 2023, see note 2, supra. The first twelve of these factors are the traditional factors set out in *Burk v. City of Oklahoma City,* see note 12, supra.

**15.** *Spencer v. Oklahoma Gas & Elec. Co.,* 2007 OK 76, ¶ 13, 171 P.3d 890; *Arkoma Gas Co. v. Otis Engineering Corp.,* see note 10, supra.

settlement class for payment of damages. We disagree with the claimant's arguments.

¶ 18 Here, this Court had no opportunity to review the certification decision. Volkswagen failed to timely file its certiorari petition, requiring this Court to dismiss the cause on September 21, 2009. Therefore, the Court of Civil Appeals ruling on certification is the law of the case.

¶ 19 In *Hess v. Volkswagen of America, Inc.* [*Hess I*], 2009 OK CIV APP 84, 221 P.3d 132, the Court of Civil Appeals stated:

VW relies on a Florida case, *Volkswagen of America, Inc. v. Sugarman*, 909 So.2d 923 (Fla.Ct.App.2005), which, like the instant case, concerns a class composed of Jetta owners whose front bumper assemblies had been damaged as a result of contact with a wheel stop or curb. The Florida appellate court noted that, under Florida law, the "predominance requirement is not satisfied when the claims involve factual determinations which are unique to each plaintiff." *Id.* at 924. It reversed class certification because "the key element of causation mandates individual inquiry into each plaintiff's claim," including such factors as vehicle condition, type of damage, and actions of the driver.

The *Sugarman* **holding is clearly inconsistent with Oklahoma law.** [Italics in original. Bold supplied. Footnotes omitted.]

¶ 20 Most certainly, in arguments before the Court of Civil Appeals, Hess opposed application of *Sugarman* to the certification decision. Such opposition leads to the conclusion that Hess asserted either that Florida law was substantially different from that of Oklahoma's for certification purposes or that Bauta's representation may have been inadequate. Nevertheless, whether either, both, or none of these deductions are correct, arguments that Mr. Bauta's experience in the failed Florida litigation was beneficial to the conclusion of the instant cause is unconvincing.

¶ 21 There was no issue of settlement addressed in *Sugarman* and the Court of Appeals concluded that the Florida law on certification did not comport with Oklahoma's on the same subject. Furthermore, Hess provides no citation of authority for the proposition that fees incurred in a cause independent of another may be collected in related litigation.

¶ 22 Under the facts presented and without supporting jurisprudence, it is difficult for this Court to conceive how Bauta's experience in Florida was of assistance to Hess here, especially where the attorney was unsuccessful at the certification stage in Florida. Therefore, we hold that the inclusion of Bauta's legal fees attributable solely to the Florida litigation in the lodestar calculation was an abuse of discretion.

¶ 23 **b. The trial court abused its discretion by applying a 1.9 incentive to the lodestar fee based on the identical analysis utilized to support an award of less than half such an award.**

¶ 24 The trial court originally awarded $3,610,719.15 in attorneys' fees. In so doing, the court found "that the results obtained by Class Counsel do not mandate an increase in the fee award." It determined further that "a slight reduction in the lodestar is warranted based on the inclusion of attorney fees from the *Sugarman* litigation." Taking in consideration the monetary outcome of the case and balancing that with the fees awarded, the trial court determined that "a 5% reduction in the lodestar is justified." [16]

¶ 25 **On reconsideration, the trial court adopted, straight out of its prior order and without change, its analysis based on *Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659 and 12 O.S. Supp.2009 § 2013(G)(4)(e) that it had originally utilized to determine that the reasonable attorneys' fee would be $3.6 million.**[17] It then looked to *Berry v. Volkswagen Group of America, Inc.*, 397 S.W.3d 425 (Mo.2013).

---

**16.** Trial court's Order, filed April 10, 2013, providing in pertinent part at 52.

**17.** Trial court's Order on Reconsideration of Fees and Expenses, filed June 14, 2013, see note 3, supra.

¶ 26 The trial court noted that: the facts of *Berry* and those here were similar; the instant litigation seemed to be the more intense of the two; although Missouri law was fundamentally different from Oklahoma, it appeared that the Missouri standards were the more restrictive; the uncertainty of recovery here would have convinced most attorneys to abandon the litigation; the Florida litigation was necessary to the successful prosecution of this case; and noted the possible chilling effect its original ruling might have on future litigants facing complex class action cases. On consideration of these factors, the trial court readopted its original lodestar of $3,800,757.00, an amount not representing the 5% reduction in consideration of the *Sugarman* case. It then applied a multiplier of 1.9 for an adjusted fee of $7,221,438.30.

¶ 27 **Before discussing *Berry*, we note our determination, supra, that inclusion of attorney fees in the lodestar calculation for Bauta's time associated with the failed *Sugarman* litigation was unwarranted and an abuse of discretion. Furthermore, we disagree with the trial court's conclusion that Missouri's standards for the award of attorneys' fees in class action litigation are more restrictive than Oklahoma's. While Missouri courts need only consider eight factors in making an enhancement decision,[18] the Oklahoma trial bench must consider the thirteen factors outlined in 12 O.S. Supp.2013 § 2023.[19]**

¶ 28 Berry brought a class action against Volkswagen related to defective window regulators installed in some of its vehicles. On appeal from the trial court's award of attorney fees, the Missouri court determined that the trial court did not abuse its discretion in determining the lodestar amount of $3,087,320 or in applying a multiplier of 2.0 for a total award of $6,174.650 in attorneys' fees. **In concluding that the trial court did not abuse its discretion, the court in *Berry* focused on three factors considered by the trial court: any award to class counsel was contingent; taking the case precluded class counsel from accepting other employment; and the time required for trial delayed work on class counsel's other work.** The *Berry* court stated:

> These findings support a finding that a multiplier was necessary to ensure a market fee that compensated class counsel for taking this case in lieu of working less risky cases on an hourly basis.

¶ 29 Like the fees in *Berry*, fees here were contingent in nature. Nevertheless, the trial court noted that there was "no evidence of any lost opportunity by any Class Counsel" to take on other clients or cases. Rather, it appears that there is evidence that counsel had every opportunity to participate in other litigation and nationwide class actions.[20] This indicates that **at least two of the factors relied upon in *Berry* to support the 2.0 multiplier are absent here.**

¶ 30 Perhaps more instructive here than *Berry* is *In re Volkswagen & Audi Warranty Extension Litigation*, 692 F.3d 4 (1st Cir. 2012). Although *Audi* concerned the primary issue of whether federal or state law would govern the settlement of a class action, its analysis of the application of a multiplier provides guidance here.

¶ 31 *Audi* involved a class action alleging improprieties in Volkswagen's warranty extension or reimbursement program as it related to engine defects in certain Volkswagen and Audi vehicles. As is the case here, protracted litigation resulted in a settlement

---

**18.** *Berry v. Volkswagen Group of America, Inc.*, 397 S.W.3d 425 (Mo.2013), providing in pertinent part at p. 431:

"... [T]here are factors that may be considered to determine the amount of attorneys' fees to award.... One consideration in determining the amount of attorneys' fees is the result achieved.... Other relevant factors in determining the reasonable value and amount of statutorily authorized fees include: 1) the rates customarily charged by the attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of opposition...."

**19.** Title 12 O.S. Supp.2013 § 2023, see note 2, supra.

**20.** Trial court's Order, filed April 10th, providing in pertinent part at 38.

agreement providing that Volkswagen would pay "reasonable attorneys' fees and expenses."

¶ 32 The claimants' attorneys in *Audi* argued that they should receive $37.5 million in attorneys' fees from what they anticipated would be a $414 million recovery. A special master recommended an award of $30 million. Applying a lodestar calculation, the district court calculated fees at $500.00 per hour to produce a base lodestar value of $7,734,000. It applied a multiplier of 2.5, resulting in a fee of $19,335,000. It utilized these figures to support a $30 million fee award.

¶ 33 On appeal, the appellate court first determined that state rather than federal law was applicable to attorney fee calculations. The cause was remanded for application of Massachusetts law. As to the enhancement figure, the Court of Appeals for the First Circuit noted:

> [A] question remaining on remand· is the question of the appropriate contingency enhancement, if any. **The district court's choice of a multiplier figure was not based on Massachusetts law nor justified by the record, and it is therefore vacated**.... As to the last question, **the actual claims data collected by the settlement administrator is relevant to the enhancement question and in determining the appropriate fee.** [Emphasis provided.]

Although the settlement value in *Audi* was estimated to be $414 million, Volkswagen contended that the actual number would be in the $50 million range.[21]

¶ 34 A nationwide class of 2,103,229 owners was certified here. At certification, Volkswagen admitted having received complaints from 663 persons involving the Jetta front spoilers being damaged from contact with a parking block or wheel stop. If all of the class had been awarded the $140 in damages provided to claimants, the total settlement amount would have approached $295 million. History has shown that **only 310 valid claims have been filed and there has been a pay-out for damages for the minimal amount of $45,780.** No payments went to Oklahoma residents.

¶ 35 This Court has long recognized the importance of the relationship between the amount sued for in a case seeking only money damages and the results obtained.[22] As defined by Hess, the "class" included in excess of two million Jetta owners. Although in excess of 300 members have received full recovery for damage repairs and the warranty period has been expanded by twelve months through the settlement, if the payout is spread across the entirety of the defined class, recovery is minuscule.

¶ 36 When we consider the award to the class, as did the federal court in *Audi*, we have little difficulty in concluding that application of a 1.9 enhancement figure to the lodestar amount constituted an abuse of discretion. Nevertheless, we are loath to go so far as did the federal court and to instruct the district court that the record will not support application of a percentage amount to the lodestar figure. Our hesitancy lies in the fact that we are aware that the trial court is cognizant that multipliers may adjust a lodestar upwards or may diminish the award.[23]

## CONCLUSION

¶ 37 The decision to file a nationwide class action can be the cause of massive amounts of work. The class counsel, being the masters of their complaints and all attorneys and their clients being servants to them, must

---

**21.** No decision on attorney fees has been issued by the Massachusetts court. On Oct. 10, 2012, the United States District Court of Massachusetts held that reassignment of the case to another district judge was required to hear the attorneys' fees issue. *In re Volkswagen & Audi Warranty Extension Litigation*, 898 F.Supp.2d 346 (D.Mass. 2012).

**22.** *Tibbetts v. Sight 'n Sound Appliance Ctrs.*, 2003 OK 72, ¶ 11, 77 P.3d 1042; *Southwestern Bell Telephone Co. v. Parker Pest Control*, 1987 OK 16, ¶ 13, 737 P.2d 1186. See also, *Arkoma Gas Co. v. Otis Engineering Corp.*, see note 10, supra.

**23.** The trial court's Order, filed on April 10, 2013, providing in pertinent part at ¶ 52:

"A lodestar adjustment based on results obtained, can be downward as well as upward, and substantial in amount. *Arkoma Gas Co. v. Otis Eng'g Corp.*, 1993 OK 27, 849 P.2d 92 [392]." [Italics in original.]

consider the decision to file in that light.[24] Nevertheless, the use of class-action procedures for litigation of individual claims may offer substantial advantages for named plaintiffs. It may motivate them to bring cases that, for economic reasons, might not be brought otherwise.[25]

¶ 38 Trial judges have wide discretion in making reductions based on estimates of time spent on activities that are non-compensable in whole or in part.[26] Here, the trial court abused its discretion in not deducting the entirety of the fees claimed in the failed Florida litigation when calculating the lodestar.

¶ 39 There is a strong presumption that the lodestar method, alone, will reflect a reasonable attorney fee.[27] On reconsideration, the trial court applied a 1.9 increase of attorney fees based largely on the Missouri Supreme Court case, *Berry*, supra, a non-binding pronouncement on Missouri law, and factors not existing in the instant cause. No rational basis for the trial court's adjustment of the attorney fees based on the same factors which it determined did not warrant enhancement in its original order exists. Therefore, application of a 1.9 enhancement to the lodestar constituted an abuse of discretion.

¶ 40 The cause is reversed and remanded. The attorney fees, as herein modified, are to be assessed against Volkswagen and awarded to Hess in a manner consistent with this opinion and as ordered by the trial court.

**REVERSED AND REMANDED.**

COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, TAYLOR (by separate writing), GURICH, JJ., concur

COMBS, J., disqualified.

**TAYLOR, J., concurring (joined by WINCHESTER, J.)**

¶ 1 I concur in today's opinion finding that the trial court abused its discretion, vacating the attorney-fee award, and requiring the trial court to start anew in determining the reasonable amount of attorney fees, but write separately to provide guidance in determining reasonable attorney fees on remand. In reviewing the attorney-fee award, it is important to understand what this case is about and what it is not about. It is about a $140.00 replacement, including parts and labor, of a piece of decorative plastic on a Volkswagen Jetta. It is not about attorneys acting as private attorneys general protecting the social good; it is about attorneys acting with a business plan.[1] It is not about righting a constitutional wrong, it is not about protecting Jetta owners from bodily injury or death, and it is not about protecting the public policy of this state. It is about 310 pieces of decorative plastic.

¶ 2 Rule 1.5(a) of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2011, ch. 1, app. 3–A, requires attorneys to charge a reasonable fee. Rule 1.5(a) is the basis for the requirement that all fees, even those awarded in a class action, be reasonable. The considerations for determining reasonable attorney fees were set out in Rule 1.5(a) well before *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, see 5 O.S.1961, ch. 1, app. 3, § 12, and are substantially identical to those in Title 12, Section 2023(G) of the Oklahoma Statutes with the exception that Section 2023(G) also includes as considerations whether the case is undesirable, awards in similar causes, and

---

**24.** *Dewey v. Volkswagen of America*, 728 F.Supp.2d 546 (D.N.J.2010) [Overruled on other grounds.].

**25.** *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980).

**26.** *Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 75 Cal.Rptr.3d 413 (Ct.App.2008).

**27.** *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010); *In re Enron Corp. Securities*, 586 F.Supp.2d 732 (S.D.Tex.2008).

**1.** It would be interesting to know how these class representatives came to be plaintiffs since no Oklahoma plaintiffs benefitted from the recovery. Did they seek out counsel?

the risk of recovery in the litigation.[2] Rule 1.5(a)'s considerations for determining whether a requested or collected fee is reasonable apply equally to fixed fees and contingency fees. *In re Adoption of Baby Boy A*, 2010 OK 39, 236 P.3d 116; *Oliver's Sports Ctr., Inc. v. Nat'l Standard Ins. Co.*, 1980 OK 120, 615 P.2d 291.

¶ 3 There are two primary methods of calculating attorney fees in class actions: the lodestar method and the contingency fee method.[3] The contingency fee method assures that the fee has a reasonable relationship to the recovery. Even though this Court adopted the lodestar method in *Burk*, 1979 OK 115 at ¶ 10, 598 P.2d at 661, the contingency fee method is incorporated into any calculation of attorney fees because the amount in controversy and the results obtained must be considered in determining reasonable attorney fees. 12 O.S.Supp.2013, § 2023(G)(8). In fact, the relationship of the attorney fees to the recovery is "the most critical factor" in determining reasonable attorney fees. *Tibbetts v. Sight 'n Sound Appliance Ctrs., Inc.*, 2003 OK 72, ¶ 13, 77 P.3d 1042, 1049. Attorney fees that are out of proportion with or have no relation to the recovery may be indicative of a case being overworked, of fee churning, and of unnecessarily protracted litigation.[4]

¶ 4 In addition to failing to give proper weight to the most important consideration (the relationship between the attorney fees and the recovery), the trial court also misconstrued the nature of the claims and erred in its application of a number of the considerations in determining the reasonable attorney fees. For example, the district court's finding that the litigation was "arduous and complicated" and that the attorneys showed a particular level of "expertise and courage" is unfounded and an abuse of discretion. When one thinks of courage, Clarence Darrow and the fictional Atticus Finch come to mind. It is hard to imagine promoting the cause of decorative plastic spoilers on a Volkswagen Jetta as courageous. "Courage" and decorative plastic parts which cause no danger to any person are concepts that do not go together. This case involves two jurisdictions, Oklahoma and Ohio, as the Florida case was dismissed, not numerous jurisdictions making coordination unduly complex. The fact that the case was not certified in Florida does not make this a complex case or an unpopular cause which would make it difficult to obtain counsel or require courage to litigate.

¶ 5 This is a very simple case which does not involve death, traffic safety, or bodily harm. This case involves a cosmetic defect so insignificant that the vast majority of the 2.1 million class members did not bother to file a claim, and only 310 were able to secure any recovery.[5] In fact, the plaintiffs' attorneys expressly acknowledged that a majority of the 2.1 million class members suffered no injury from the alleged defect and would not be entitled to any recovery.

¶ 6 This case was brought on a contingency fee basis, meaning that the attorneys would have recovered at most $25,000.00 in fees from their clients. The trial court took into account that "much of the litigation occurred follow[ing] the reversal of certification" in the Florida case. Contingency fees are generally based on the final recovery in a case. Here, the trial court should give no consideration to resources expended in a failed certification attempt in Florida.

¶ 7 In considering the nature and length of the professional relationship between the attorneys and the clients, the trial court mistakenly considered the length of this litigation, including the litigation in Florida which did not involve most of the attorneys in this

---

2. Title 12, Section 2023(G) of the Oklahoma Statutes is quoted at footnote 2 of this Court's opinion·and does not need to be restated here.

3. In the lodestar method of calculating fees, the court multiplies the reasonable number of hours worked times a reasonable hourly rate. The court may then use an up or down multiplier based on *Burk* criteria to determine reasonable attorney fees. In the contingency fee method, the attorney-fee award is based on a percentage of the plaintiffs' recovery.

4. Rule 3.2 of the ORPC provides: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

5. This does not include nine pending claims with the potential recovery of $1,260.00.

case. Rather, the trial court should have considered the length and nature of the relationship before the litigation began. The situation here is not like that of an attorney on retainer, employed by a business, or who represents a client in all legal matters. There is no evidence that the attorneys here had a relationship with any of the class representatives before the litigation began.

¶ 8 The trial court considered several factors improperly in rationalizing that the attorney-fee award is reasonable, such as recovery of future claims. The class recovery at the relevant time, *i.e.*, when the attorney fees were awarded, was at most $47,040.00. In trying to justify the attorney fees, the trial court improperly considered future claims. Still, the trial court's most egregious error by far was failing to give proper consideration to the relationship of the attorney fees to the recovery.

¶ 9 The attorneys' requested fees of over $14,000,000.00 is 317 times the recovery. The trial court's attorney-fee award of $7,221,438.30 is 154 times the recovery. The initial trial court award of $3,610,719.15 in attorney fees is 77 times the recovery. Lastly, if the trial court on remand omits only the fees charged in the Florida litigation and caps attorney fees at $650.00 an hour, the attorney-fee award will still be 64 times the claimants' recovery. Such a disproportional benefit to the lawyers relative to the claimants' recovery is repugnant to the purposes of our judicial system and to the purposes of class actions and erodes confidence in the courts. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 781, 2014 WL 6466128 *3 (7th Cir.2014) (calling "outlandish" attorney fees amounting to sixty-nine percent of the aggregate value of the settlement).

¶ 10 Justice O'Connor warned against another "troubling [consequence]" of approving fee agreements without inquiring into any rational relationship between the fee and the recovery. *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1223, 120 S.Ct. 2237, 147 L.Ed.2d 265 (2000) (O'Connor, J., statement respecting the denial of the petition for a writ of certiorari). Such fee agreements would "encourage the filing of needless lawsuits where, because the value of each class member's individual claim is small compared to the transaction costs in obtaining recovery, the actual distribution to the class will inevitably be minimal." *Id.* Justice O'Connor's concerns are relevant when class attorneys are awarded fees based on a settlement agreement. The claimed transaction costs for this simple litigation are curiously high-eight attorneys and two paralegals from four firms in four different states racked up over 7,100 hours to secure a $140.00 recovery for about 310 class members. The trial court's attorney-fee award reflected a preposterous number of attorney and paralegal hours given the minimal and paltry recovery. On remand, the trial court must act with a wise and courageous sword to sever the unreasonable attorney fees and bring them in line with the recovery by about 310 class member of at most $47,040.00 in benefits.