**2017 OK CIV APP 35**

**Rajina HESS and Kelly Parsons, individually and on behalf of persons similarly situated, Plaintiffs/Appellees/Counter-Appellants,**

v.

**VOLKSWAGEN GROUP OF AMERICA, INC., Defendant/Appellant/Counter-Appellee,**

**Charles Miller and Vivian Miller, individually and on behalf of other persons similarly situated, Intervenor Plaintiffs/Counter-Appellants.**

**Case Number: 114131**

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided: 03/13/2017

Mandate Issued: 07/11/2017

Terry W. West, Bradley C. West, THE WEST LAW FIRM, Shawnee, Oklahoma T. Christopher Tuck (admitted pro hac vice), A. Hoyt Rowell, III (admitted pro hac vice), RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC, Mount Pleasant, South Carolina, Dennis E. Murray (admitted pro hac vice), MURRAY & MURRAY, Sandusky, Ohio, and Juan Bauta (admitted pro hac vice), THE FERRARO LAW FIRM, Miami, Florida, for Plaintiffs/Appellees/Counter-Appellants and Intervenor Plaintiffs.

John H. Tucker, Colin H. Tucker, Kerry R. Lewis, RHODES, HIERONYMUS,

JONES, TUCKER & GABLE, Tulsa, Oklahoma and Daniel V. Gsovski, HERZFELD & RUBIN, PC, New York City, New York, for Defendant/Appellant/Counter-Appellee.

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 The trial court previously granted attorney fees against Defendant/Appellant/Counter-Appellee Volkswagen Group of America, Inc., (Volkswagen) in an amount exceeding $7 million in this multi-jurisdictional, class action law suit. In an appeal from that award, the Oklahoma Supreme Court concluded the trial court abused its discretion by failing to deduct the entirety of fees claimed in certain "failed Florida litigation" when calculating the lodestar fee; the Court also concluded the trial court abused its discretion by multiplying the lodestar fee of approximately $3.6 million by 1.9. *See Hess v. Volkswagen of Am., Inc.*, 2014 OK 111, ¶¶ 38 & 39, 341 P.3d 662. Thus, the Court reversed the trial court's order and remanded the case with instructions that "[ ]the attorney fees, as herein modified, are to be assessed against Volkswagen ... in a manner consistent with this opinion and as ordered by the trial court." *Id.* ¶ 40. The Court emphasized that the total recovery in this case against Volkswagen of only $45,780 is "minuscule" when "the pay-out is spread across the entirety of the defined class[ ]." *Id.* ¶ 35. However, the Court stated in its conclusion that "[ ]there is a strong presumption that the lodestar method, alone, will reflect a reasonable attorney fee." *Id.* ¶ 39 (footnote omitted). The Court declined to address Volkswagen's "due process challenge, as attorney fees must be recalculated on remand." *Id.* ¶ 1 n.1.

¶2 Volkswagen now appeals from the trial court's Order awarding, on remand, an attorney fee in the amount of $983,616.75, together with expenses and postjudgment interest "from the date of Judgment of June 14, 2013, through the present date." Volkswagen does not contest that the trial court, as instructed, subtracted the fees generated in the failed Florida litigation from the lodestar fee. Moreover, Volkswagen admits the trial court "then reduced the lodestar by 70%[ ]." However, Volkswagen asserts on appeal that the new attorney fee award—an award which constitutes a mere 13.6% of the prior attorney fee award—is still too high. Volkswagen points out that the new award equals approximately "21.5 times as much money as ... recovered for the entire class," and argues that the award constitutes both "an abuse of discretion under Oklahoma law" and "violates due process." Volkswagen also argues the trial court erred in finding that postjudgment interest is to run from June 14, 2013, rather than from June 18, 2015—the date of the Order which is the subject of the present appeal.

¶3 Plaintiffs/Appellees/Counter-Appellants Rajina Hess and Kelly Parsons, and Intervenor Plaintiffs/Counter-Appellants Charles and Vivian Miller, individually and on behalf of persons similarly situated (collectively, Plaintiffs), counter appeal. They argue the trial court erred in reducing the lodestar fee.

¶4 For a more detailed recitation of the facts and procedure of this case leading up to the prior appeal, see *Hess*, 2014 OK 111, 341 P.3d 662. This case was also the subject of an even earlier appeal—as noted by the Supreme Court, "[ ]a more detailed account of the underlying certification process can be found in *Hess v. Volkswagen of America, Inc.*, 2009 OK CIV APP 84, 221 P.3d 132." 2014 OK 111, ¶ 3 n.5, 341 P.3d 662.

## STANDARD OF REVIEW

¶5 As stated by the Supreme Court in the prior appeal,

The reasonableness of attorney fees depends on the facts and circumstances of each individual case and is a question for the trier of fact. The standard of review for considering the trial court's award of an attorney fee is abuse of discretion. Reversal for an abuse of discretion occurs where the lower court ruling is without rational basis in the evidence or where it is based upon erroneous legal conclusions.

*Hess*, 2014 OK 111, ¶ 9, 341 P.3d 662 (footnotes omitted).

## ANALYSIS

### I. Is the new attorney fee award so high as to constitute an abuse of discretion?

¶ 6 The fundamental goal of the trial court in this case was to "arriv[ ]e] at a fair and reasonable fee for class counsel," and the trial court's upward or downward adjustment, if any, of the lodestar fee—i.e., the "fee arrived at by multiplying the attorney's hourly rate by the time expended"—was to be based on application of those factors delineated by the Legislature in 12 O.S. Supp. 2013 2013(G)(4)(e). *Hess*, ¶ 10. Those factors, as summarized by the Supreme Court, are:

time and labor required; novelty and difficulty of the questions; skill required to perform the legal services; preclusion of other employment; customary fee; whether the fee is fixed or contingent; time limitations; amount involved and results obtained; experience, reputation, and abilities of attorneys involved; undesirability of the case; nature and length of the professional relationship with the client; awards in similar causes; risk of recovery; and whether any benefits of the recovery take a non-cash form.

*Hess*, ¶ 10 (footnote omitted).[1]

¶ 7 The trial court accomplished this task in its detailed and well-reasoned Order. The trial court first calculated the lodestar fee: that is, "$3,800,757.00 in raw lodestar billings tendered by all class counsel, less the $522,034.50 attributable to the [ ]failed Florida] litigation, which is deducted from the lodestar," to arrive at a lodestar fee of $3,278,722.50. The trial court noted that this amount is consistent with "the directives of the Supreme Court and the evidence previously received[ ].]" Volkswagen does not contest the fact that $3,278,722.50 constitutes the appropriate lodestar fee in this case.

¶ 8 The trial court further stated in its Order as follows:

Plaintiffs argue correctly that the Supreme Court concluded its opinion by stating that there is a strong presumption that the lodestar method alone will reflect a reason-

able attorney fee. [ ]*Hess*, ¶ 39.] [ ]Volkswagen] responds by correctly asserting that the Supreme Court stated in its opinion that "[ ]i]n all cases, the attorney fees must bear some reasonable relationship to the amount in controversy." [ ]*Id.* ¶ 10.]

The Supreme Court previously held that a lodestar adjustment based on results obtained can be downward as well as upward, and substantial in amount as held in *Arkoma Gas Company v. Otis Engineering Corp.*, 1993 OK 27, 849 P.2d 392. Therefore it is apparent to the Court that it has latitude in deciding a fee award between the amounts sought by [ ]Plaintiffs] of $3,290,669.50 and that argued for by [ ]Volkswagen] of $91,560.00.

¶ 9 In *Arkoma*, the Supreme Court affirmed the trial court's reduction of a lodestar fee of $24,627.23 down to $5,500. The plaintiff in that case originally sought $70,000 in damages. However, after a three-day jury trial the plaintiff recovered only $100. As stated by the Supreme Court,

The trial judge found that the hours and rates asserted by plaintiff were reasonable, but felt that an award of $24,627.23 as attorneys' fees would be excessive and unfair where plaintiff recovered only $100.00. The trial judge recited that he had considered all of the factors in [ ]*Burk*], but felt that he was required to consider the entire circumstances to ensure that such award was fair and reasonable under the circumstances.

*Arkoma*, 1993 OK 27, ¶ 4, 849 P.2d 392. In addition to the low recovery, there were also no "difficult questions of law in the case," and "[ ]t]here was no suggestion that any actions by the defense caused plaintiff's attorneys to expend an excessive amount of time." *Id.* ¶ 8. The Supreme Court concluded the trial judge appropriately "considered the amount of the attorneys' fees in relation to the result achieved by plaintiff and [ ]in light of] the lack of novelty or complexity of the case." *Id.*

¶ 10 In the present case, Plaintiffs recovered only $45,780. As noted by the Supreme Court in the prior appeal,

---

1. As noted by the *Hess* Court, "[ ]t]he first twelve of these factors are the traditional factors set out

in *Burk v. City of Oklahoma City*," 1979 OK 115, 598 P.2d 659.

A nationwide class of 2,103,229 owners was certified here. At certification, Volkswagen admitted having received complaints from 663 persons involving the Jetta front spoilers being damaged from contact with a parking block or wheel stop. If all of the class had been awarded the $140 in damages provided to claimants, the total settlement amount would have approached $295 million. History has shown that **only 310 valid claims have been filed and there has been a pay-out for damages for the minimal amount of $45,780.**

*Hess*, 2014 OK 111, ¶ 34, 341 P.3d 662.

¶ 11 The minimal actual recovery in this case of only $45,780 is comparable to the minimal recovery of only $100 in *Arkoma* where the plaintiff originally sought $70,000 in damages. Given the minimal recovery and the lack of complexity in *Arkoma*, the trial court reduced the lodestar fee by approximately 78% to $5,500. Notably, the attorney fee award affirmed by the Supreme Court in *Arkoma* still constituted *fifty-five times the actual recovery*.

¶ 12 Unlike *Arkoma*, the present case did require a great deal of time and labor and, according at least to the trial court's initial order, it involved difficult and novel questions; it required specialized skill to perform the legal services; and it involved attorneys with unique experience, reputation, and abilities. Nevertheless, given the minimal recovery, the trial court, like the trial court in *Arkoma*, reduced the lodestar fee of $3,278,722.50 by 70% to $983,616.75. While the attorney fee award in *Arkoma* constituted fifty-five times the actual recovery, the attorney fee award in this case constitutes approximately twenty-one times the actual recovery. In *Finnell v. Seismic*, 2003 OK 35, 67 P.3d 339, the Oklahoma Supreme Court discussed *Arkoma* with approval and stated: "While we are committed to the rule that a fee for legal services must bear some reasonable relationship to the judgment, we have never identified a percentage above which a fee's relationship to the damage award must be deemed unreasonable *per se*." *Finnell*, ¶ 19 (footnote omitted).

¶ 13 At least in retrospect, the wisdom of pursuing this case is dubious. Indeed, as stated in the separate concurring opinion in the prior appeal, this case

> is not about attorneys acting as private attorneys general protecting the social good; it is about attorneys acting with a business plan. It is not about righting a constitutional wrong, it is not about protecting Jetta owners from bodily injury or death, and it is not about protecting the public policy of this state. It is about 310 pieces of decorative plastic.

*Hess*, 2014 OK 111, ¶ 1, 341 P.3d 662 (Taylor, J., concurring (joined by Winchester, J.)) (footnote omitted). In the concurring opinion, the trial court was encouraged to "act with a wise and courageous sword to sever the unreasonable attorney fees and bring them in line with the recovery by about 310 class member[ ]s] of at most $47,040.00 in benefits." *Id.* ¶ 10. Nevertheless, the trial court's determination, and this appeal, are controlled by the reasoning and holding in the Majority Opinion.

¶ 14 As stated above, the Majority in *Hess* stated in its conclusion that "[ ]t]here is a strong presumption that the lodestar method, alone, will reflect a reasonable attorney fee." *Hess*, ¶ 39. Although Volkswagen asserts the trial court abused its discretion by awarding 30% of the lodestar fee, it is difficult to see how an award of the entire lodestar fee would have constituted an abuse of discretion in light of the Majority's Opinion. If anything, it appears the trial court did act with a "courageous sword" by severing 70% of the lodestar fee from the fee award. We conclude the trial court's refusal to further reduce the fee award does not constitute an abuse of its discretion, and we find unpersuasive Volkswagen's arguments in this regard.

## II. Due Process

¶ 15 Volkswagen argues the attorney fee award violates the Due Process Clauses of the United States and Oklahoma Constitutions. "The terms of the Fourteenth Amendment to the U.S. Constitution and those of Article 2, section 7 of the Oklahoma Constitution forbid the state from depriving any person of life, liberty, or property without due process of law." *Booth v. McKnight*, 2003 OK 49, ¶ 18, 70 P.3d 855. Volkswagen

points out that the Due Process Clause imposes limitations on punitive damages awards,[2] and Volkswagen argues that such limitations should apply to the attorney fee award in this case because, it asserts, the fee award in this case was a penalty—a "punitive award[ ]." Volkswagen asserts the attorney fee award in this case is "so excessive as to be punitive, and ... thus [ ]is] subject to and capped by due process." It asserts the attorney fee award in this case was "awarded not to compensate success achieved but to 'deter future misconduct,'"; thus, the award is "by definition punitive in nature" and "must therefore by subject to constitutional constraints."

 ¶ 16 Volkswagen's assertion that the attorney fee award in this case—which equals a mere 30% of the modified lodestar fee—was made to deter future misconduct rather than to compensate success achieved is unfounded, and Volkswagen's repeated assertions that the attorney fee award constitutes a penalty does make the attorney fee award subject to due process limitations applicable to punitive damages awards. As explained by the United States Court of Appeals for the Eleventh Circuit, attorney fee awards are compensatory in nature rather than punitive in nature. *Action Marine, Inc. v. Cont'l Carbon Inc.*, 481 F.3d 1302, 1321 (11th Cir. 2007). That court concluded that the attorney fee awarded under a Georgia statute in a tort case involving bad faith was "compensatory in nature" and to be included as "part of the measure of actual damages for the necessary comparison" of whether a punitive damages award was unconstitutionally excessive. *Id.* It follows that compensatory attorney fees cannot be deemed part of a punitive damages award, and Volkswagen's argument entirely overlooks the fact that punitive damages awards under the proposed due process analysis are *compared against*

the actual and compensatory damages, including interest and attorney fees. Thus, due process limitations on the amount of punitive damages do not apply to compensatory attorney fee awards.

 ¶ 17 We emphasize that it is the "settled law of the case"[3] that Plaintiffs are owed some amount of attorney fees. In the prior Opinion in this case, the Oklahoma Supreme Court directed that "attorney fees, as herein modified, are to be assessed against Volkswagen and awarded to Hess in a manner consistent with this opinion and as ordered by the trial court." *Hess*, 2014 OK 111, ¶ 40, 341 P.3d 662. As noted above, the Supreme Court also stated in its conclusion that "[ ]t]here is a strong presumption that the lodestar method, alone, will reflect a reasonable attorney fee." *Id.* ¶ 39 (footnote omitted). The trial court nevertheless reduced the lodestar fee by 70%. Upon our review, we reject Volkswagen's assertion that the attorney fee award in this case was other than compensatory in nature, and we reject its argument that the award constitutes a violation of due process limitations applicable to punitive damages awards.

*III. Is the new attorney fee award so low as to constitute an abuse of discretion?*

 ¶ 18 Plaintiffs ask that we reverse the "lodestar-reduction decision" and "remand these proceedings to the district court with instructions to award Class Counsel their 'raw' lodestar of $3,278,722.50[ ]." However, while the Supreme Court stated in its conclusion, as quoted above, that "[ ]t]here is a strong presumption that the lodestar method, alone, will reflect a reasonable attorney fee," *id.* ¶ 39 (footnote omitted), the Supreme Court also plainly indicated the trial court had discretion to reduce the award. In fact,

**2.** As stated by the Oklahoma Supreme Court:
The Due Process Clause of the Fourteenth Amendment imposes substantive and procedural limitations on punitive damages awards. The Due Process Clause prohibits punitive damages awards which are "grossly excessive" in relation to a state's legitimate interests in punishment and deterrence. Governed by this constitutional limitation, the states "have considerable flexibility in determining the level of

punitive damages that they will allow in different classes of cases and in any particular case."
*Gilbert v. Sec. Fin. Corp. of Okla.*, 2006 OK 58, ¶ 30, 152 P.3d 165 (footnotes omitted).

**3.** "The settled-law-of-the-case doctrine bars relitigation of issues settled by an appellate opinion." *Dean v. Multiple Injury Trust Fund*, 2006 OK 78, 145 P.3d 1097 (citation omitted).

the Supreme Court, after stating that the recovery was "minuscule" when "the pay-out is spread across the entirety of the defined class," *id.* ¶ 35, and after concluding the trial court abused its discretion in applying a 1.9 multiplier to the lodestar fee, stated it was "loath to go so far as ... to instruct the district court that the record will not support application of a percentage amount to the lodestar figure," and it declined to do so, *id.* ¶ 36. In the next sentence, the Supreme Court stated: "Our hesitancy lies in the fact that we are aware that the trial court is cognizant that multipliers may adjust a lodestar upwards *or may diminish the award.*" *Id.* ¶ 36 (emphasis added) (footnote omitted). We interpret these statements as subtle but unmistakable encouragement to the trial court to not simply award the lodestar fee on remand, but to "diminish" the award in light of the "minuscule" recovery. Regardless, this portion of the Opinion clearly states that a diminishment of the lodestar on remand is within the trial court's discretion.

¶ 19 Furthermore, the reduction in this case is not unprecedented. For example, in the *Arkoma* case, as discussed above, the Oklahoma Supreme Court affirmed the trial court's 78% reduction of the lodestar fee. The present case involves a similar, but slightly less drastic reduction of 70%; moreover, this case resulted in an arguably far greater failure on the part of Plaintiffs in terms of recovery. As discussed above, in *Arkoma* the plaintiff originally sought $70,000 in damages, but recovered only $100 after a three-day jury trial. In the present case, Plaintiffs recovered a total of $45,780, but this amount, as quoted above, is minuscule when the pay-out is spread across the entirety of the class. Indeed, the four law firms which have represented Plaintiffs in this twelve-year, multi-jurisdictional, class action law suit, managed to recover only 0.015% of the "$295 million" in potential claims. *See Hess,* ¶ 34. The plaintiff in *Arkoma,* by contrast, recovered 0.14% of its requested damages. As stated by Plaintiffs, this is "one of the longest running and contentiously litigated class actions in Oklahoma history[ ].]" That may be the case; nevertheless, as stated by the Supreme Court in the prior appeal, ultimately "[ ]n]o Oklahoma citizens received any settlement

pay-out." *Hess,* ¶ 5. The Supreme Court later repeated in *Hess* that "[ ]h]istory has shown that **only 310 valid claims have been filed and there has been a pay-out for damages for the minimal amount of $45,780.** No payments went to Oklahoma residents." *Id.* ¶ 34.

¶ 20 Importantly, the standard of review in this case prevents this Court from simply deciding what we would do if we were the trier of fact; that is, this appeal does not provide the parties with an opportunity to argue the issues de novo. The Supreme Court in the prior appeal specifically stated, as quoted above, that "[ ]t]he reasonableness of attorney fees ... is a question for the trier of fact," and it stated that "[ ]t]he standard of review for considering the trial court's award of an attorney fee is abuse of discretion." *Hess,* ¶ 9 (footnotes omitted). The Court explained, "Reversal for an abuse of discretion occurs where the lower court ruling is without rational basis in the evidence or where it is based upon erroneous legal conclusions." *Id.* (footnote omitted). *See also Finnell,* 2003 OK 35, ¶ 8, 67 P.3d 339 (An abuse of discretion occurs "when a trial judge makes a clearly erroneous conclusion and judgment, against reason and evidence.") (footnote omitted). We conclude the trial court's determination is not without a rational basis in the evidence—i.e., it is not clearly erroneous, against reason and evidence—nor is it based upon erroneous legal conclusions. Instead, the trial court methodically and carefully followed the directives of the Supreme Court in *Hess.* We conclude the attorney fee award does not constitute an abuse of the trial court's discretion.

## IV. Postjudgment Interest

¶ 21 In the Order on appeal, which was filed on June 18, 2015, the trial court awarded Plaintiffs postjudgment interest on the award of attorney fees and costs "from the date of Judgment of June 14, 2013[ ].]" June 14, 2013, is the file date of the prior attorney fee order which awarded Plaintiffs attorney fees in excess of $7 million and which was reversed by the Supreme Court in *Hess.* Volkswagen asserts the trial court erred in awarding postjudgment interest from the

date of the prior order because, it asserts, "Oklahoma law has long held that interest can be awarded only on sums which are certain or liquidated." It asserts the attorney fee award was not known or ascertainable until June 18, 2015, the date of the Order currently on appeal, and the award set forth in the prior order was not certain because, among other things, it was reversed by the Oklahoma Supreme Court.

¶ 22 The Oklahoma Supreme Court has stated:

> Prejudgment interest differs from post-judgment interest. The latter need not stand reduced to, and be expressed in, a lump sum. *It is a continuing obligation that runs at the statutory rate from the date of judgment until paid.* The former, on the other hand, constitutes an integral part of the total adjudged liability that is recovered and stands in law as an item of damages owed for delayed satisfaction of an obligation on which it accrues.

*May-Li Barki, M.D., Inc. v. Liberty Bank & Trust Co.*, 1999 OK 87, 20 P.3d 135 (original emphasis omitted) (emphasis added) (footnote omitted).[4] The issue in this case is whether "the date of judgment" of the attorney fee award lands on the date of the recent Order or on the date of the initial order which was reversed on appeal.

¶ 23 In general,

> [ ]t]he purpose of postjudgment interest is not to punish the defendant, but to encourage prompt payment and to compensate the plaintiff for another's use of his or her money.... Generally, postjudgment interest statutes are designed to eliminate the financial incentive or disincentive to appeal and to ensure that a judgment creditor whose satisfaction is delayed *because of an*

*unsuccessful appeal* receives the time value of the money judgment.

44B Am. Jur. 2d *Interest and Usury* 40 (Westlaw) (emphasis added) (footnote omitted).

¶ 24 However, the issue arises whether a *successful* appeal might, under certain circumstances, push back the date from which postjudgment interest begins to accrue. In *Ventling v. Johnson*, 466 S.W.3d 143 (Tex. 2015), the Supreme Court of Texas stated, "When an appellate court's remand results in multiple trial court judgments, the question becomes: which judgment controls for the purpose of postjudgment-interest accrual?" 466 S.W.3d at 149. The *Ventling* Court explained that

> when an appellate court remands a case to the trial court for entry of judgment consistent with the appellate court's opinion, and the trial court is not required to admit new or additional evidence to enter that judgment, ... the date the trial court entered the original judgment is the "date the judgment is rendered," and post-judgment interest begins to accrue ... as of that date.

*Id.* at 150 (quoting *Phillips v. Bramlett*, 407 S.W.3d 229, 239 (Tex. 2013)).

¶ 25 However, the *Ventling* Court stated that this rule left open the question of "whether postjudgment interest accrues from the date of the original judgment even when the trial court must reopen the record in order to render judgment on remand." 466 S.W.3d at 150 (citation omitted). The court explained that when this occurs—when the trial court reopens the record on remand from the appellate court—"postjudgment interest will begin to accrue on the date the

---

**4.** See also 23 O.S. 2011 6, which states:

> Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.

Moreover, 12 O.S. Supp. 2013 727.1 provides, in part, as follows with regard to postjudgment interest:

> A. 1. Except as otherwise provided by this section, all judgments of courts of record, including costs and attorney fees authorized by statute or otherwise and allowed by the court, shall bear interest at a rate prescribed pursuant to this section.
>
> 2. Costs and attorney fees allowed by the court shall bear interest from the earlier of the date the judgment or order is pronounced, if expressly stated in the written judgment or order awarding the costs and attorney fees, or the date the judgment or order is filed with the court clerk.

subsequent judgment is rendered." *Id.* (citation omitted).

¶ 26 In *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wash.2d 364, 798 P.2d 799 (1990), the Supreme Court of Washington stated that where the appellate court leaves the trial court, on remand, "with nothing more than [ ]a] mathematical calculation"— i.e., where the appellate court modifies the award—postjudgment interest "runs from date of original judgment." *Id.* at 805 (citing *Yarno v. Hedlund Box & Lumber Co.*, 135 Wash. 406, 237 P. 1002 (1925)). However, the *Fisher* Court explained that when more is required of the trial court on remand than "a simple mathematical computation" supplied by the appellate court, postjudgment interest runs from the date of the new judgment. 798 P.2d at 805. The court stated, "The same holds true for the attorney fees award." *Id.* The court concluded:

> The trial court could not merely recalculate.... The exercise of discretion involved here removes it from the modification situation.
>
> The trial court erred in directing interest to run on the portions of the judgment reversed by this court from the date of the original judgment. This court's reversal wiped out the original judgment and required new findings and a new judgment. Thus, interest ... [ ]on] the award of attorney fees must run from the date of the new judgment[ ].]

*Id.*

¶ 27 The rules set forth in *Ventling* and *Fisher* are consistent with case law in Oklahoma. In *Missouri-Kansas-Texas Railroad Co. v. Edwards*, 1961 OK 192, 401 P.2d 303, the Oklahoma Supreme Court essentially affirmed as modified the judgment on appeal; it did not, by comparison, reverse the judgment and remand to the district court for re-

exercise of the district court's discretion. Thus, the Oklahoma Supreme Court stated in the Syllabus of its Opinion:

> When judgment of District Court on verdict in favor of plaintiff in an action in tort for damages is appealed by the defendant, and this Court on appeal *affirms the judgment subject to a remittitur of a stated portion thereof* as an *alternative to a reversal of the judgment*, and plaintiff files a remittitur in accordance with the judgment, the unremitted portion of the judgment bears interest from date same was originally rendered by the court below.

*Edwards*, 0 (Syllabus by the Court) (emphasis added).

¶ 28 In *Thielenhaus v. Thielenhaus*, 1995 OK 5, 890 P.2d 925, the Oklahoma Supreme Court explained in a footnote that *Edwards* is a case "where a monetary award is *affirmed as modified* by reduction in its amount. In [ ]such circumstances] post-judgment interest on the reduced portion should indeed be allowed to run from the date of the original adjudication. *See* [ ]*Edwards*]." *Thielenhaus*, ¶ 18 n.39 (original emphasis omitted) (emphasis added). However, because the *Thielenhaus* Court—which was addressing a scenario involving a "monetary award for the wife's share of the marital component in the husband's retirement fund"—determined to "remand [ ]the] cause for the retirement interest's nisi prius *revaluation*," the *Thielenhaus* Court concluded that "[ ]t]he trial court's post-remand monetary award for the wife's share of the ... retirement fund shall operate with effect *from the date of its post-remand entry*." *Id.* ¶ 18 (emphasis added). The *Thielenhaus* Court contrasted this "re-valuation" scenario with the "affirmed as modified" circumstances presented in *Edwards*. *Thielenhaus*, ¶ 18 & n.39.[5]

---

**5.** The Supreme Court of Maine has also cited *Edwards*: in *Ginn v. Penobscot Co.*, 342 A.2d 270, 279 (Me. 1975), the Court cited *Edwards*, among other sources, in support of the following propositions:

> A remittitur is not a new judgment. When a judgment of the Superior Court is affirmed subject to the acceptance of a remittitur, upon such acceptance the judgment of the trial court stands as modified. The trial court's judgment

> is not obliterated. It is the judgment for the purpose of the running of the statutory interest.

*Ginn*, 342 A.2d at 279 n.4 (citations omitted). The *Ginn* Court further stated:

> [ ]I]nterest would accrue on the judgment as reduced by the remittitur, from the date of the entry of the judgment for the greater amount. *This judgment was not vacated, but simply modified by reduction in amount by the plain-*

■ . ¶ 29 Consequently, in Oklahoma, and consistent with the rules set forth in *Ventling* and *Fisher*, postjudgment interest begins to run from the date of the original order only when the appellate court, on appeal from that order, "direct[ ]s] entry of the judgment that should have been awarded to the plaintiff below," *Kellenberger v. Bob Meyers Moving & Storage Co.*, 1979 OK CIV APP 26, ¶ 9, 595 P.2d 1229, and not when the appellate court remands the case to the trial court for further proceedings requiring the exercise of the trial court's discretion, *see Thielenhaus*, ¶ 18 & n.39.[6]

■ ¶ 30 Pursuant to the rules set forth in *Ventling* and *Fisher*, postjudgment interest in this case should begin to run from the date of the recent Order, not the initial order. This is so because, although the trial court did not admit new or additional evidence in entering its Order, it did reopen the record; i.e., it reviewed the evidence and exercised its discretion in light of the Oklahoma Supreme Court's Opinion, and it reached a completely different conclusion regarding the appropriate award to be rendered in this case. More precisely, and contrary to Plaintiffs' assertions, the trial court did more than perform a simple mathematical computation because the trial court was also required to reexamine the facts and circumstances in light of the applicable factors. As the Majority stated in *Hess*, "attorney fees must be recalculated on remand." 2014 OK 111, ¶.1 n.1, 341 P.3d 662. The necessary exercise of the trial court's discretion on remand removes this case "from the modification situation," *Fisher*, 798 P.2d at 805, and essentially rendered the fee award, up until the date of the recent Order, an unliquidated claim requiring the trial court to reexamine all the facts and circumstances to determine an appropriate amount due.

■ ¶ 31 We conclude the trial court erred in awarding postjudgment interest from the date of the initial fee order. Given the Supreme Court's Opinion in the prior appeal, the amount of appropriate attorney fees in this case was not established or certain at the time of the initial fee order, and the trial court was required to exercise its discretion on remand to recalculate the award in light of the applicable factors. Consequently, the trial court erred in finding that postjudgment interest on the attorney fee award should run from the date of the initial fee order; we conclude postjudgment interest on the attorney fee award should run, instead, from the date of the recent

*tiff's remittitur.* The position of the parties is precisely the same as though the verdict and judgment had been for this reduced sum.
*Id.* (emphasis added) (citation omitted).

**6.** It is perhaps worth noting a final Oklahoma Supreme Court case citing *Edwards.* In *Chandler-Frates & Reitz v. Kostich*, 1981 OK 74, 630 P.2d 1287, the Court's discussion supports the conclusion that the award of postjudgment interest in *Edwards* (i.e., from the date of the original judgment) is strictly limited to circumstances where the appellate court modifies, or affirms as modified, the judgment. There, the Court stated:

In legal contemplation there can be but one judgment in every action although it is possible to have several successive appealable decisions. Multiple judgments cannot co-exist in the same cause. When, as here, following its rendition a judgment is modified in amount, as distinguished from being amended nunc pro tunc, the later version replaces the earlier without the interposition of a relation-back doctrine that would make succession retroactive. Although *in some instances* interest may indeed be allowed to run from the date of original rendition on a judgment *that is later modified* in amount either on appeal or in a

1031 proceeding before the trial court, the modification is nonetheless treated as a distinctly separate juristic act which *draws its life and takes effect from the date of its pronouncement* and not nunc pro tunc from the time of the original judgment.
*Kostich*, ¶ 5 (emphasis added) (citing, inter alia, *Edwards*). It stands to reason that when a judgment is more than merely modified—i.e., when it is reversed on appeal and the case is remanded to the trial court to exercise its discretion anew and calculate a new award, even if the possible range of the award is, unsurprisingly, partially restricted by the appellate court's opinion reversing and remanding the case to the trial court— that the only judgment for purposes of postjudgment interest is the subsequent one. Indeed, if there can only be "but one judgment," and the first entry is reversed, it would appear unavoidable that the only judgment is the subsequent one. That is, in such circumstances—where the judgment is not merely "affirmed as modified" but is reversed and the case remanded to the trial court to enter a new order after again exercising its discretion and reviewing the facts and law a second time—the new judgment cannot at all be said to "draw[ ] its life" from the first entry.

Order—June 18, 2015. We stress that this conclusion applies only to the award of attorney fees—although the costs/expenses awarded did change (down to $119,148.74), the Oklahoma Supreme Court ordered the reduction thereby "modifying" the award of costs. Thus, because no trial court reassessment was required as to costs, the trial court's determination that postjudgment interest on costs/expenses is to run from June 14, 2013, is affirmed.

## CONCLUSION

¶ 32 We conclude the amount of attorney fees awarded does not constitute an abuse of the trial court's discretion. We further conclude the award does not violate the Due Process Clause of the federal or state constitutions. We do, however, conclude the trial court erred in awarding postjudgment interest on the attorney fee award from the date of the initial fee order. We conclude postjudgment interest on the attorney fee award should run from the date of the recent Order—June 18, 2015—and we direct the trial court, on remand, to enter an order awarding postjudgment interest on the attorney fee award only from this later date. The Order is otherwise affirmed.

¶ 33 **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

WISEMAN, J., concurs, and
THORNBRUGH, V.C.J., concurs in part and dissents in part.

THORNBRUGH, V.C.J., concurring in part and dissenting in part:

¶ 1 I concur in this opinion, except for that part of the decision holding that post-judgment interest should run only from the date of the final trial court ruling on remand. I dissent from the latter holding.

¶ 2 I recognize that this issue is unsettled in Oklahoma law, but I would apply the rule exemplified in *Missouri-Kansas-Texas R. Co. v. Edwards*, 1961 OK 192, 401 P.2d 303. In a prior opinion in that case, the Supreme Court had required a remittitur of $371,207 in damages, leaving plaintiff with $278,793 of the original judgment. The case later re-turned to the Supreme Court on the question of *when* post-judgment interest on the remaining $278,793 began to accrue. The Court adopted the following principle as set forth in *American Jurisprudence*:

> No general rule is deducible from the decisions passing on the question, but it may be observed that in a majority of the cases interest is held to run from the date of the original judgment or decree appealed from, and not from the date of the judgment as modified.

1961 OK 192 at ¶ 18, 401 P.2d 303 (quoting 30 Am. Jur. 'Interest', Sec. 46, p. 40).

¶ 3 I find no basis, as the majority does, for a system in which an award modified by an *appellate court* bears interest from a different date than an award modified by a *trial court on remand*.

¶ 4 Two hypothetical scenarios illustrate the inequity of such a rule. The first involves the common practice of an appellate court returning a fee decision for the lack of an adequate *Burk* analysis. Even if the trial court makes the required analysis and *reaches the same conclusion*, the innocent prevailing party is denied interest from the date of the original judgment, as the decision on remand is a "new calculation."

¶ 5 The second scenario involves the situation in which in which a trial court *increases* an award on remand. Again, the innocent prevailing party is penalized by a loss of post-judgment interest because the trial court made a new calculation, even though the party's right to the original award was confirmed. Although the trial court in the case before us modified the lodestar fee by some 70 percent on remand, it still confirmed that a portion of the original judgment was valid. I would, therefore, hold that, as in *Missouri-Kansas-Texas R. Co. v. Edwards*, interest on this portion of the judgment began to accrue from the date of the original judgment.