IOCHEM CORPORATION v. OKLAHOMA CORPORATION COMMISSION



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IOCHEM CORPORATION v. OKLAHOMA CORPORATION COMMISSION

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IOCHEM CORPORATION v. OKLAHOMA CORPORATION COMMISSION
2021 OK CIV APP 28
Case Number: 117780
Decided: 02/08/2021
Mandate Issued: 07/14/2021
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2021 OK CIV APP 28, __ P.3d __

 

COMPLAINT OF NORTHWESTERN ELECTRIC COOPERATIVE, INC. AGAINST OKLAHOMA GAS AND ELECTRIC COMPANY FOR ENFORCEMENT OF THE RETAIL ELECTRIC SUPPLIER CERTIFIED TERRITORY ACT AND COMMISSION ORDER NO. 95298

IOCHEM CORPORATION, Appellant,
v.
OKLAHOMA CORPORATION COMMISSION, Appellee,
and
NORTHWESTERN ELECTRIC COOPERATIVE, INC., Complainant/Appellee,

OKLAHOMA ASSOCIATION OF ELECTRIC COOPERATIVES, Intervenor/Appellee.

APPEAL FROM THE OKLAHOMA CORPORATION
COMMISSION EN BANC

AFFIRMED

C. Eric Davis, Catherine L. Campbell, PHILLIPS MURRAH, P.C., Oklahoma City, Oklahoma, for Appellant,

Michele Craig, OKLAHOMA CORPORATION COMMISSION, Oklahoma City, Oklahoma, for Appellee,

Deborah R. Thompson, OK ENERGY FIRM, PLLC, Oklahoma City, Oklahoma, and
Jana L. Knott, BASS LAW, Oklahoma City, Oklahoma, for Complainant/Appellee,

J. Eric Turner, Adam J. Singer, Pete G. Serrata, III, DERRYBERRY & NAIFEH, LLP, Oklahoma City, Oklahoma, for Intervenor/Appellee.

THOMAS E. PRINCE, JUDGE:

¶1 The central question in this case is whether the Oklahoma Corporation Commission, at the request of Appellee, Northwest Electric Cooperative, Inc. ("NWEC"), properly barred OG&E from providing electrical service to an electric consuming facility of the Appellant, IOCHEM Corporation ("IOCHEM") which is located outside of OG&E's certified territory. To reach that issue, we must construe the applicable statutory language of the Retail Electric Supplier Certified Territory Act ("RESCTA"), found at 17 O.S. 2011, §§ 158.21, et seq. The Final Order of the Oklahoma Corporation Commission ("OCC"), found the issues in favor of the Appellee, Northwest Electric Cooperative, Inc. We affirm that decision.

BACKGROUND

¶1 NWEC was founded in 1940, as a non-profit corporation, serving electric meters in Woodward, Ellis, Harper, Beaver, Major, Woods and Dewey counties. OG&E is an investor owned utility providing retail electric service in Oklahoma and Arkansas. IOCHEM Corporation ("IOCHEM") is a producer of medical grade iodine that is produced from its plant near Vici, Oklahoma. At its Vici processing plant, IOCHEM converts brine into iodine. The operations at issue are part of a brine recovery unit in iodine/iodide production, subject to compulsory joint operations through a legal entity known as the IOCHEM Morrow Brine and Solution Gas Unit that is operated by IOCHEM. The brine recovery unit consists of a processing plant, an incinerator plant, a booster station, and twenty-two wells connected to the processing plant by pipeline. Sixteen wells are producing wells and six wells are USEPA Class 5 injection wells.

¶2 OG&E has provided electric service to IOCHEM's private distribution system since 1997. Although IOCHEM's operation is located in NWEC's certified territory, OG&E was authorized (in 1987) to provide service to the IOCHEM substation based on the exemption found in 17 O.S. 2011, § 158.25E, for a connected load of 1,000 KW or greater. IOCHEM obtained electricity solely from OG&E under this structure from 1987 to 1997.

¶3 In 1997, NWEC began providing electricity to three (3) IOCHEM producing wells, eventually expanding to ten (10) producing wells, including the Sweet well. In 2018, IOCHEM determined, for economic reasons, to switch the wells serviced by NWEC to OG&E. To accomplish that goal, IOCHEM initiated a proceeding at the OCC on February 23, 2018, that sought a declaratory ruling that IOCHEM could connect all of its wells to OG&E by use of its private grid (that was powered by electricity purchased from OG&E). However, on March 14, 2018, prior to receiving an order from the OCC to authorize IOCHEM to switch electric providers, IOCHEM disconnected the Sweet well from the NWEC distribution lines and reconnected it to IOCHEM's private grid. That action was taken without authorization of NWEC, OG&E or the OCC. NWEC then initiated this action against OG&E, claiming a violation of the exclusive certified territory rule established under RESCTA. The OCC permitted IOCHEM to intervene.

¶4 NWEC contended that OG&E had a duty to stop IOCHEM from consuming OG&E furnished electricity to the Sweet well, even though IOCHEM had exclusive operation and control over connection and operation of the Sweet well. OG&E agreed that the Sweet well was located in NWEC's certified territory. After NWEC filed its complaint, OG&E requested IOCHEM to disconnect the Sweet well from its service, but IOCHEM failed to comply. OG&E agreed with NWEC about its duty under RESCTA, and contended that the only way it could disconnect from the Sweet well was to disconnect from IOCHEM's entire brine recovery project.

¶5 An Administrative Law Judge for the OCC concluded that the OCC lacked jurisdiction over NWEC's terms and conditions of service (based on 17 O.S. 2011, § 158.27E) and that IOCHEM's contract defenses are outside the OCC's jurisdiction. The ALJ further stated, in part, that to determine whether there has been an invasion of certified territory, the central inquiry is "where electricity is furnished or made available for consumption. Ordinarily, that point is where the electricity is metered or sold."

¶6 The OCC rejected the ALJ's recommendation and, en banc, found, in part, that:

23. . . . [T]he Sweet Well was being lawfully served by NWEC prior to IOCHEM's disconnection of NWEC's service.

24. . . . [B]ecause the Sweet Well was an electric-consuming facility that was previously receiving service from NWEC, OG&E is prohibited from furnishing, making available, rendering, or extending service to it. . . .

25. . . . [T]here are no applicable exceptions to the RESCTA that would allow OG&E to serve the Sweet Well. . . . .

* * *

. . . OG&E shall stop providing electric service to the Sweet Well and shall not furnish, make available, render, or extend retail electric service to the Sweet Well at any time in the future, absent an order from the Commission allowing it to do so.

¶7 Upon request by IOCHEM, the OCC modified its Final Order, to grant a stay upon the filing of a supersedeas bond. The amount of the supersedeas bond was set at $212,677.11, which is the average amount of "annual revenue that NWEC would receive from [IOCHEM, the customer] during an eighteen-month period less fuel expenses."

STANDARD OF REVIEW

¶8 The standard of review for appeals from the OCC is de novo for alleged violations of constitutional rights as well as statutory interpretation and the substantial evidence standard for findings of fact. See Okla. Const. Art. 9, § 20; Public Service Co. of Oklahoma v. State ex rel. Oklahoma Corporation Commission, 2005 OK 47, 115 P.3d 861, 869-870; Dobson Telephone Co. v. State ex rel. Oklahoma Corporation Commission, 2019 OK 25, 441 P.3d 156, 161 ("[u]nder the de novo standard of review, the Court has plenary, independent and non-deferential authority to determine whether the trial tribunal erred in its legal rulings"); Turpen v. Oklahoma Corporation Commission, et al., 1988 OK 126, 769 P.2d 1309, 1336 ("[t]he Commission's findings must be detailed sufficiently to ensure against arbitrariness and to apprise this court of the actual basis for its decision so that the court may determine whether the findings are supported by the law and substantial evidence").

¶9 It is well established that considerable discretion is vested in the OCC in the performance of its duties and that its decisions are entitled to "a presumption of correctness":

A presumption of correctness accompanies the Corporation Commission's findings in matters it frequently adjudicates and in which it possesses expertise. The Corporation Commission has wide discretion in the performance of its duties and this Court may not substitute its judgment on disputed questions of fact unless the findings are contrary to law or unsupported by substantial evidence.

See Smith Cogeneration Management, Inc. v. The Corporation Commission, et al., 1993 OK 147, 863 P.2d 1227, 1232 (emphasis added).

ANALYSIS

¶10 The OCC determined, in part, that the Sweet well "was an electric-consuming facility" that had been lawfully served by NWEC prior to IOCHEM's disconnection of NWEC's service. That finding was based on 17 O.S. 2011, § 158.25A:

A. Except as otherwise provided herein, each retail electric supplier shall have the exclusive right to furnish retail electric service to all electric-consuming facilities located within its certified territory, and shall not furnish, make available, render or extend its retail electric service to a consumer for use in electric-consuming facilities located within the certified territory of another retail electric supplier; provided that any retail electric supplier may extend its facilities through the certified territory of another retail electric supplier, if such extension is necessary for such supplier to connect any of its facilities or to serve its consumers within its own certified territory.

(emphasis added).

¶11 None of the exceptions to the statutory mandate of § 158.25A apply to the facts of this case, including the "One Megawatt Exception". See 17 O.S. 2011, § 158.25E. The "One Megawatt Exception" was utilized by OG&E and IOCHEM in 1987 to authorize OG&E to begin providing electric service to IOCHEM's private distribution system.[1]

 

¶12 The phrase "electric consuming facilities" is defined in 17 O.S. 2011, § 158.22(6), as follows:

 

6. The term 'electric consuming facilities' means everything that utilizes electric energy from a central station source.

See 17 O.S. 2011, § 190.3(4) (defining the phrase "electric consuming facility" as everything that utilizes electric energy from a central station source"). It is our duty to give meaning and effect to the words chosen by the Legislature, unless to do so would result in an absurdity. See Tate v. Browning-Ferris, Inc., 1992 OK 72, 833 P.2d 1218, 1228 ("[t]o ascertain legislative intent we look to the language of the pertinent statute. Statutory words are to be given their ordinary sense except when a contrary intention plainly appears"); Hill v. Board of Education, District I-009, Jones, Oklahoma, 1997 OK 107, 944 P.2d 930, 931 ("[t]he fundamental rule of statutory construction is to ascertain and, if possible, give effect to the Legislature's intention and purpose as expressed in a statute").

¶13 The verb "utilize", as included in the phrase "utilizes electric energy from a central station source", should be given its ordinary meaning: i.e., "to make use of: turn to practical use or account". See www.merriam-webster.com. Based thereon, the verb "utilize" should be interpreted to mean the point of "use" and/or "consumption". Conversely, it should not be interpreted to mean where the electricity is metered or sold (i.e., the point of "delivery"). This interpretation also is consistent with § 158.31, where the Legislature stated that RESCTA is to be "construed liberally". See Public Service Company of Oklahoma v. State ex rel. Corporation Commission, 1992 OK 153, 842 P.2d 750, 752-753 (where the Court rejected a "narrow" interpretation of the authority of the OCC under the RESCTA to "recertify" a retail electric supplier's territory). The duty to construe a statute "liberally" may not, however, be used by a litigant to relax and/or avoid its burden of proof. See Standard Marine Insurance Co., Ltd., of Liverpool v. Traders' Compress Co., 1915 OK 284, 148 P. 1019, 1021 (where the Court discussed the phrase "burden of proof" and described it, in part, as "the duty of establishing the entire case by a preponderance of evidence"); McKnight v. American Airlines, Inc., 2002 OK CIV APP 38, ¶ 4, 42 P.3d 310, 312 (where the Court stated, in part, that a "[l]iberal construction of the [Workers' Compensation] act in favor of those it is supposed to benefit is no substitute for proof or persuasion").

¶14 The purpose of RESCTA, as set forth in 17 O.S. 2011, § 158.23, is as follows:

It is hereby declared to be in the public interest that, in order to encourage the orderly development of coordinated statewide retail electric service, to avoid wasteful duplication of distribution facilities, to avoid unnecessary encumbering of the landscape of the State of Oklahoma, to prevent the waste of materials and natural resources, for the public convenience and necessity and to minimize disputes between retail electric suppliers which may result in inconvenience, diminished efficiency and higher costs in serving the consumer, the state be divided into geographical areas, establishing the unincorporated areas within which each retail electric supplier is to provide the retail electric service as provided in this act.

(emphasis added).

¶15 There was substantial evidence in this case to support the OCC's determination that the Sweet well "was an electric-consuming facility" See Union Texas Petroleum Corporation v. Jackson, et al., 1995 OK CIV APP 63, 909 P.2d 131, 137 ("[t]he determination of whether substantial evidences [sic]exists does not require that the evidence be weighed, only that there be evidence tending to support such order, i.e. the proof must be 'more than mere scintilla'"); Oklahoma Department of Public Safety v. McCrady, et al., 2007 OK 39, 176 P.3d 1194, 1201 ("[a]n agency's order will be affirmed if the record contains substantial evidence in support of the facts upon which the decision is based, and if the order is otherwise free of error"). The Sweet well was connected to the other IOCHEM facilities by pipelines and IOCHEM's private grid. However, the record shows that there is a lack of continuity or adjacency of the IOCHEM facilities and that there is a considerable distance between the processing plant and the various wells. The separate wells also operate independently of one another. The following additional facts demonstrate that the findings of the OCC were supported by substantial evidence:

A. When the Sweet well became operational in 2000, it was a new well.

B. The Sweet well is located in the certified territory of NWEC, and (from May 19, 2000 until May 14, 2018) it never received electricity from any other provider.

C. All of IOCHEM's production wells, including the Sweet well, were single wells located or separated across multiple governmental sections and were interconnected by pipelines.

¶16 The OCC determined this case on a narrow set of facts. Based on the record presented here, however, given the purpose of RESCTA, as stated in § 158.23, the Court holds that the OCC's finding was not contrary to law and was supported by substantial evidence. See Smith Cogeneration Management, Inc. v. The Corporation Commission, et al., 1993 OK 147, 863 P.2d 1227, 1232.

¶17 The claims of IOCHEM regarding the alleged inequitable conduct of NWEC are misplaced. This enforcement action was initiated by the Complaint of NWEC against OG&E. IOCHEM moved to intervene as a customer seeking recourse against an electric supplier. The Electric Restructuring Act of 1997 (found at 17 O.S. 2011, § 190.1, et seq.), makes it clear that retail electric customers are prohibited from switching retail electric suppliers unless the entities involved have agreed in writing to such transaction. See 17 O.S. 2011, § 190.7A. No such contract exists between NWEC and OG&E. The only contract that was alleged to exist was between NWEC and IOCHEM. Therefore, to have permitted IOCHEM to have defeated NWEC's complaint based on the equitable defenses of waiver and/or equitable estoppel in this case would have changed the character of this case and transformed it into a mere private dispute between IOCHEM and NWEC. See Gibson, et al. v. Elmore City Telephone Co., 1966 OK 30, 411 P.2d 551, 553 ("[t]he Corporation Commission has no jurisdiction over a controversy between two private concerns.")

¶18 The OCC has "jurisdiction to enforce compliance with the . . . Act, and . . . to prohibit furnishing retail electric service by any retail electric supplier except in its certified territory . . .". See 17 O.S. 2011, § 158.27D. Moreover,

This act shall be construed liberally. The enumeration of any object, purpose, power, manner, method or thing shall not be deemed to exclude like or similar objects, purposes, powers, manners, methods or things.

See 17 O.S. 2011, § 158.31. Additionally, it has been observed that:

[I]n regulating public utilities, the Commission is clothed by the Constitution with legislative, executive, and judicial powers. (citation omitted). In adjudicating matters, the Commission exercises the power of a court of record. (citation omitted). We conclude that the Commission's adjudicatory function includes the equitable powers of a court of record to consider the parties' conduct and circumstances . . . .

Public Service Co. of Oklahoma v. Norris Sucker Rods, 1995 OK CIV APP 101, 917 P.2d 992, 997 (emphasis added).

¶19 Because there is substantial evidence in the record to support the decision of the OCC, the Court finds that the OCC exercised its discretion to not entertain IOCHEM's equitable defenses of waiver and/or equitable estoppel in this case. See Teleco, Inc. v. Corporation Commission, et al., 1982 OK 124, 653 P.2d 209, 212 ("[i]n the performance of its duties the Commission has wide discretion, and this Court may not substitute its judgment on disputed questions of fact unless the findings are contrary to law or unsupported by substantial evidence").

¶20 IOCHEM argues that the amount of the supersedeas bond was improperly determined by the OCC. Okla. Const. Art. 9, § 21, authorizes the OCC to fix the amount of the bond:

Upon the giving of notice of appeal from an order of the Corporation Commission, the Commission, if requested, shall suspend the effectiveness of the order complained of until the final disposition of the order appealed, and fix the amount of suspending or supersedeas bond. Such suspending or supersedeas bond shall be approved and filed with the Corporation Commission (or approved, on review, by the Supreme Court), and made payable to the State of Oklahoma; . . .

(emphasis added).

¶21 In Southwestern Bell Telephone Co. v. Oklahoma Corporation Commission, 1994 OK 142, 897 P.2d 1116, the Court described the process by which the OCC sets a supersedeas bond as "an adjudicative inquiry":

[W]hen the Commission issues an order and thereby stays the effect of a Commission order on appeal as to an appealing party that stay order is judicial in character. In other words, the Art. 9 § 21 stay is based upon the Commission exercising its discretion, and determining the proper bond for a particular appeal. Such is an exercise of an adjudicative power, and not legislative or executive. . . . The decision on the amount of a bond calls for an adjudicative inquiry into the circumstances, i.e., the nature of the order being stayed and the proper amount for the protection of the competing interests.

Id., at 1119 (emphasis added).

¶22 The Final Order of the OCC directed one (1) electric service provider not to provide service within the certified territory of another electric service provider. The competing interests (i.e., "circumstances") consists of whether NWEC or OG&E would provide service to the Sweet well. Because NWEC was the non-appealing party, it was necessary for the OCC to consider how to protect NWEC's rights pending the outcome of the appeal. In setting the supersedeas bond, the OCC considered the revenue loss that would be borne by NWEC during the appeal. That analysis was consistent with the holding in Southwestern Bell Telephone Co. v. Oklahoma Corporation Commission, Id.

¶23 The decision of the OCC regarding the amount of the supersedeas bond was, therefore, supported by substantial evidence.

¶24 IOCHEM argues that the OCC exceeded its jurisdiction, first, by characterizing this case as a private dispute between a utility and a citizen and, secondly, that the supersedeas bond was an "award of damages". The OCC is vested with broad authority under RESCTA, as provided § 158.27D:

D. Upon proceedings brought by an interested person or by action of the Commission, the Commission shall have the jurisdiction to enforce compliance with the Retail Electric Supplier Certified RESCTA, and shall have jurisdiction to prohibit furnishing retail electric service by any retail electric supplier except in its certified territory or territories, or where lawfully serving, and in connection with such enforcement and prohibition to exercise all powers herein or otherwise granted to the Commission.

(emphasis added).

¶25 In Public Service Co. of Oklahoma v. State ex rel. Corporation Commission, et al., 1992 OK 153, 842 P.2d 750, the Court described the OCC's jurisdiction under RESCTA as follows:

The Act does, however, grant the Commission general supervisory authority over the entities governed thereby. Such authority includes the power to prescribe rules, requirements and regulations affecting the services, operation, management and conduct of the regulated businesses. 17 O.S. § 158.27(A). The Act further bestows upon the Commission jurisdiction to enforce compliance with the Act and to exercise all powers "[t]herein or otherwise granted to the Commission." 17 O.S. § 158.27(B). The power to enforce compliance with the Act must necessarily include the power, within certain limitations, to further the Act's stated purposes.

Id., at 752 (emphasis added).

¶26 The OCC enforced the territorial boundaries of NWEC's territory and, because no exceptions within RESCTA applied, prohibited OG&E from "furnishing retail electric service" outside its certified territory. The OCC, therefore, acted within its authority and did not exceed its jurisdiction.

¶27 IOCHEM contends that the Final Order of the OCC violates the substantive due process interests of both IOCHEM and the brine owners, arguing that the Final Order imposes "too heavy a burden to impose" because it allegedly holds "IOCHEM's entire facility hostage to the Sweet well". See Braitsch v. City of Tulsa, et al., 2018 OK 100, 436 P.3d 14, 19 ("[s]ubstantive due process of law is the general requirement that all governmental actions have a fair and reasonable impact on the life, liberty, or property of the person affected").

¶28 The Court rejects IOCHEM's claim that substantive due process protections were violated by the OCC Final Order. Substantive due process limitations do not prohibit the OCC from directing one electric service provider to not provide service within the certified territory of another electric service provider. See Hess, et al. v. Volkswagen Group of America, Inc., et al., 2017 OK CIV APP 35, 398 P.3d 27, 33 (where the Court held that "due process limitations on the amount of punitive damages do not apply to compensatory attorney fee awards").

¶29 The status of the brine owners, in relation to IOCHEM, exists under the umbrella of the Brine Development Act. See 17 O.S. 2011, §§ 501, et seq. The Brine Development Act created a process by which brine production may be "unitized". Section 508A(1), of the Brine Development Act, provides in part, that:

A. The plan of unitization for each such unit and unit area shall be one suited to the needs and requirements of the particular unit dependent upon the facts and conditions found to exist with respect thereto. . . [E]ach such plan of unitization shall contain fair, reasonable and equitable provisions for:

1. The efficient unitized management or control of further development and operation of the unit area. Under such plan the actual operations of the unit shall be carried on by one of the owners of the right to drill for and produce brine within the unit area as unit operator. The designation of unit operator shall be by majority vote of the owners of the right to drill for and produce brine in the unit in accordance with their acreage ownership in the unit;
. . .

(emphasis added).

¶30 Consequently, management of the unitized brine operation here, including the duty to provide electric services, is vested in IOCHEM. No substantive due process interest arises in favor of the brine owners in the context of IOCHEM's duty to secure an electric provider.

CONCLUSION

¶31 For the reasons provided, we AFFRIRM the Final Order of the OCC entered on January 24, 2019, as modified on February 7, 2019.

GOREE, P.J., MITCHELL, J., concur.

FOOTNOTES

[1] No party in this case has claimed that the Sweet well is greater than one megawatt.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2002 OK CIV APP 38, 42 P.3d 310, MCKNIGHT v. AMERICAN AIRLINES, INC.
Discussed
 1995 OK CIV APP 63, 909 P.2d 131, 66 OBJ 3931, Union Texas Petroleum Corp. v. Jackson
Discussed
 1995 OK CIV APP 101, 917 P.2d 992, 67 OBJ 1870, Public Service Co. of Oklahoma v. Norris Sucker Rods
Discussed
 2017 OK CIV APP 35, 398 P.3d 27, HESS v. VOLKSWAGEN GROUP OF AMERICA, INC.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 126, 769 P.2d 1309, 59 OBJ 2998, Turpen v. Oklahoma Corp. Com'n
Discussed
 1992 OK 72, 833 P.2d 1218, 63 OBJ 1507, Tate v. Browning-Ferris, Inc.
Discussed
 1992 OK 153, 842 P.2d 750, 63 OBJ 3422, Public Service Co. of Oklahoma v. State ex rel. Corp. Com'n
Discussed at Length
 1993 OK 147, 863 P.2d 1227, 64 OBJ 3467, Smith Cogeneration Management, Inc. v. Corporation Com'n
Discussed at Length
 1915 OK 284, 148 P. 1019, 46 Okla. 356, STANDARD MARINE INS. CO. v. TRADERS' COMPRESS CO.
Discussed
 1994 OK 142, 897 P.2d 1116, 65 OBJ 4181, Southwestern Bell Telephone Co. v. Oklahoma Corp. Com'n
Discussed
 1997 OK 107, 944 P.2d 930, 68 OBJ 2775, HILL v. BOARD OF EDUCATION
Discussed
 1966 OK 30, 411 P.2d 551, GIBSON v. ELMORE CITY TELEPHONE COMPANY
Discussed
 2005 OK 47, 115 P.3d 861, PUBLIC SERVICE CO. OF OKLA. v. STATE ex rel. OKLA. CORP. COMM'N
Discussed
 2007 OK 39, 176 P.3d 1194, OKLAHOMA DEPARTMENT OF PUBLIC SAFETY v. McCRADY
Discussed
 2018 OK 100, 436 P.3d 14, BRAITSCH v. CITY OF TULSA
Discussed
 2019 OK 25, 441 P.3d 156, DOBSON TELEPHONE CO. v. STATE EX REL. OKLAHOMA CORPORATION COMM.
Discussed
 1982 OK 124, 653 P.2d 209, Teleco, Inc. v. Corporation Com'n
Discussed
Title 17. Corporation Commission
 Cite
Name
Level

 17 O.S. 158.27, General Supervision by Commission
Discussed
 17 O.S. 158.21, Short Title
Cited
 17 O.S. 158.22, Definitions
Cited
 17 O.S. 158.23, Geographical Areas
Cited
 17 O.S. 158.31, Liberal Construction
Cited
 17 O.S. 190.1, Short Title
Cited
 17 O.S. 190.3, Definitions
Cited
 17 O.S. 501, Necessity of Authorizing, Regulating and Providing for Development of Brine and Associated Solution Gas
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA